2000 ME 48

**VILLAS BY THE SEA OWNERS ASSOCIATION**

v.

**Michael GARRITY et al.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 2000.

Decided March 14, 2000.

---

Durwood W. Parkinson (orally), Bergen & Parkinson, LLC, Kennebunk, for plaintiff Villas by the Sea.

Peter L. Thompson (orally), Coles & Thompson, LLC, Kennebunk, for defendant Michael Garrity.

1. Villas by the Sea was originally established as "Ville–Sur–Mer ." The name was changed in 1989.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Villas by the Sea Owners Association appeals from a judgment entered in the Superior Court (York County, *Crowley, J.*) declaring, after a jury-waived trial, that Michael and Patricia Garrity owned a "loft" as part of their condominium unit, and from a judgment (*Cole, J.*), likewise following a jury waived trial, in favor of the Garritys on their counterclaim for breach of contract for the failure of the Association to turn over rental revenues that it had held in partial payment of a fine assessed against the Garritys for their use of the loft. The Association contends that both judgments should be vacated because they are predicated on the court's erroneous finding that the loft was part of the condominium unit and not a common area. We find no error, and we affirm the judgments.

[¶ 2] Villas by the Sea Resort Motel Condominium is a vacation complex in Wells.[1] The Villas by the Sea Owners Association was organized for the benefit of the unit owners to manage and administer the rental of the units. Michael and Patricia Garrity purchased Unit 14F at auction in 1993.[2] In 1995, the Garritys finished a portion of the building referred to by the parties and by the developer, described in the plans, as a "loft." The loft is situated above the Garritys' third floor unit. The loft finished by the Garritys occupies only a portion of the area above the third floor unit, however; the other portion is a cathedral ceiling that is clearly a part of unit 14F. The cathedral ceiling is an original feature of the unit. As the building was constructed, however, there was no access to the loft: the Garritys cut through to the loft area, installed a

2. The Garritys also own Unit 2B.

pull-down stairway, hung sheetrock on the interior walls and trusses of the loft, and laid a plywood floor in the loft area. No other structural changes were made. The parties stipulated that two other units in the condominium also had finished lofts constructed by the developer, one owned by the Association for use as part of its office, and another owned by a private party.

[¶ 3] The Association brought a complaint against the Garritys seeking a judgment declaring that the use of the loft area by the Garritys violated the condominium declaration because the loft is a common area. The Association alleged that the Garritys were excluding other owners from the area, and further that they were trespassing on the common area. The Association also asserted that even if the Garritys did own the loft area, their use of it was otherwise in violation of the declaration. The Garritys counterclaimed, alleging that the loft was part of their unit, and claiming that the Association had breached the Association Agreement.

[¶ 4] At trial, the president of the Association testified that, at the time of the auction at which the Garritys purchased the unit, no one was given access to the loft area, nor did anyone ask about this space. He further testified that one of the walls that the Garritys had finished was load-bearing. He also stated that the loft in the Association's unit had been closed since the commencement of this litigation because "structurally it will not hold the weight." The manager of the Association testified to the effect that the loft area was built using 2 × 6 lumber, and not with the 2 × 10 lumber commonly required to support the weight of a person, and used throughout other areas in the condominium structure.

[¶ 5] The parties agreed that the issue of ownership of the loft area was controlled by the Condominium Declaration and by the plats and plans for the development. The declaration contained the following provision:

> 3. *Unit Numbers and Boundaries.* Reference is made to the recorded plat and plans referred to in Section 1 hereof for the identification number of each unit showing the location and dimensions of its boundaries. The boundaries of each unit are the interior unfinished surfaces of the floors, ceilings and walls separating the units from common areas or from other units. All floor and wall coverings, including linoleum, polyurethane, carpeting, paint, wallpaper, etc. are included within the boundaries of a unit. The provisions of Section 1602–102 of the Maine Condominium Act are adopted and incorporated herein by reference.

Also, before the court were a number of drawings, including the following depiction of the floor plan:

[¶ 6] In reaching its conclusion that the Garritys owned the loft area, the Superior Court (*Crowley, J.*) concluded that: the declaration was ambiguous on its face; the incorporated drawings contained different measurements regarding the size of the

loft; the actual square footage of each unit was not as indicated on the drawings; and the cathedral ceilings present in the top floor units were not indicated in the drawings. In addition, the court noted that the developer had finished at least two of the loft spaces. According to the court, the condominium plan was "woefully inadequate and [did] not meet the requirements of the Maine Condominium Act."

[¶ 7] Because the developer had finished some of the lofts, the court found it "reasonable to infer that the developer intended that the loft area be within the boundaries of all top floor units." The court also noted that the term "loft," in its most usual sense, referred "to an upstairs room which is part of a dwelling or working area below." Finally, the court found that, had the developer intended that the loft area not be part of the unit, it would have labeled this a "common area" rather than a "loft." The court also stated that "[n]othing in [its] opinion is to be construed as having effect on state or local laws and/or condominium rules and regulations which pertain to the use of the loft area (as opposed to the issue of ownership) in [the Garritys' unit]." Following this judgment, and on motion of the Garritys, the Superior Court (*Fritzsche, J.*) entered a summary judgment in favor of the Garritys on the remaining counts of the Association's complaint, but denied the Garritys' motion for summary judgment on their breach of contract claim.

[¶ 8] On the Garritys' counterclaim for breach of contract, the court (*Cole, J.*) found that the Association had wrongfully withheld $1,494.69 from the Garritys. Notwithstanding the Association's claim that it remained entitled to this amount as a fine for violations of state and local law, the court held that the Association was precluded from pursuing this claim by the prior declaratory judgment in the Garritys' favor. The court denied cross-motions for attorney fees, and this appeal followed.

[¶ 9] Whether or not a contractual term is ambiguous is a question of law. See *Tondreau v. Sherwin–Williams Co.,* 638 A.2d 728, 730 (Me.1994). If a contractual provision is unambiguous, it will be given its plain, ordinary, and generally accepted meaning. See *Bangor Publ'g Co. v. Union St. Mkt.,* 1998 ME 37, ¶ 5, 706 A.2d 595, 597. Interpretation of such a contract is a matter of law. See *Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996). On the other hand, a contractual provision is considered ambiguous if it is reasonably possible to give that provision at least two different meanings. See *Cambridge Mut. Fire Ins. Co. v. Vallee,* 687 A.2d 956, 957 (Me.1996). Construction of an ambiguous contract is a question of fact determined by the fact-finder and reviewed for clear error. See *Town of Lisbon,* 675 A.2d at 516.

[¶ 10] When a contract is found to be ambiguous, a court may look to extrinsic evidence of the intent of the parties. See *Bangor Publ'g Co.,* 1998 ME 37, ¶ 5, 706 A.2d at 597. Additionally, the court may look to extrinsic evidence to reveal a latent ambiguity. See *Interstate Indus. Unif. Rental Serv., Inc. v. F.R. Lepage Bakery, Inc.,* 413 A.2d 516, 519 (Me.1980) (allowing evidence of negotiations and prior agreements in order to determine whether a contract was completely or partially integrated); *cf. Snyder v. Haagen,* 679 A.2d 510, 513 (Me.1996) (allowing extrinsic evidence that application of a deed's boundary description to the ground revealed that the description was unclear).

## I.

[¶ 11] The Association claims that the declaration and unit boundary plan, read in light of the Maine Condominium Act, unambiguously demonstrate that the loft area is not part of the Garritys' unit. We disagree.

[¶ 12] The Association points to paragraph three of the declaration. The paragraph states that "[t]he boundaries of each unit are the interior unfinished surfaces of

the floors, ceilings and walls *separating the units from common areas or from other units.*" (Emphasis added.) This provision, however, cannot exclusively define what is part of a unit because it relies, in part, upon a preexisting determination of what a common area is. The provision, then, would be definitive in the Association's favor only if it were already known that the loft area was a common area or part of another unit. Interpreted otherwise, this provision would mean that the surface of any wall, even an interior one, could be a unit boundary. Nevertheless, the Association suggests that "[t]here can be no other conclusion [than] that the unit boundary does not include the *unfinished* loft area." This conclusion does not necessarily follow. Paragraph three does not by itself define where the boundary is; rather, once a boundary is located, it provides for the precise nature of that boundary. Accordingly, the Association's contention that this provision unambiguously identifies the loft as a common area is not persuasive.

[¶ 13] Neither does the statutory language resolve the issue in favor of the Association. Although 33 M.R.S.A. § 1602–102 (1998)[3] echoes paragraph three of the declaration, section 1601–103 defines "common elements" as "all portions of a condominium other than the units." 33 M.R.S.A. § 1601–103(4) (1998). Thus, paragraph three of the declaration defines what is part of the unit partially in

terms of what is a common area, and the statute defines common elements (which comprise the common area) in terms of what is a unit. Accordingly, these definitions are circular with respect to each other, and the declaration read together with the statute is ambiguous as to whether the loft is part of the unit or is part of the common area.

[¶ 14] Moreover, the plan for the structure, which would seem to be the best indicator of the intent of the developer, is ambiguous because the structure, as built, does not conform to the plan. The drawing does not show the cathedral ceilings that grace the top floor units—this area on the drawings is also part of what is labeled "loft." Thus, the line on the drawing between the third floor units and the loft area is of uncertain meaning, and because the cathedral ceiling is above this line, the line clearly cannot mean that the *entire* portion marked "loft" is common area. The court correctly concluded that the plan and declaration are ambiguous with respect to ownership of the loft.

## II.

■ [¶ 15] Once it determined that the declaration was ambiguous, the court was persuaded by the extrinsic evidence that the loft area was part of the Garritys' unit. The Association does not forcefully contend that there is no competent evidence to support the court's conclusion, but does

---

3. The statute provides:

**§ 1602–102.  Unit boundaries**
Except as provided by the declaration:
(1) If walls, floors or ceilings are designated as boundaries of a unit, all lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting any part of the finished surfaces thereon are a part of the unit, and all other portions of the walls, floors or ceilings are a part of the common elements.
(2) If any chute, flue, duct, wire, conduit, bearing wall, bearing column or any other fixture lies partially within and partially outside the designated boundaries of a unit, any portion thereof serving only that unit is a limited common element allocated solely to that unit, and any portion thereof serving more than one unit or any portion of the common elements is a part of the common elements.
(3) Subject to the provisions of paragraph (2), all spaces, interior partitions and other fixtures and improvements within the boundaries of a unit are a part of the unit.
(4) Any shutters, awnings, window boxes, doorsteps, stoops, porches, balconies, patios and all exterior doors and windows or other fixtures designed to serve a single unit, but located outside the unit's boundaries, are limited common elements allocated exclusively to that unit.
33 M.R.S.A. § 1602–102.

argue that the court gave improper weight to that evidence. We review the trial court's determination for clear error. *See Town of Lisbon*, 675 A.2d at 516.

■ [¶ 16] The court's finding is amply supported by the extrinsic evidence. Because the developer had finished at least two of the lofts and because the plan did not distinguish between units with finished lofts and those without, the court inferred that it was the developer's intent that the loft areas be a part of the top floor units.

[¶ 17] Moreover, the court relied on the ordinary meaning of the term loft. The court found that "loft" referred to "an upstairs room which is part of a dwelling or working area." This definition is supported by Webster's Seventh New Collegiate Dictionary, which defines loft as "a room or floor above another: ATTIC." WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY 497 (1970 ed.).[4] The court then concluded that, had the developer intended that the loft area be considered "common," the developer would have chosen to label this area as such. We find no error in the court's conclusion that the loft area in question[5] was a part of the unit owned by the Garritys and not a common area. Because the court did not err in its conclusion as to the ownership of the loft, we affirm the court's judgment in favor of the Garritys on their counterclaim as well.

The entry is:

Judgments affirmed.

---

4. The Association's argument that the term "attic" (as a synonym for loft) implies an area that is not used for living purposes misses the point. Even if the implication claimed by the Association is correct, the issue here is whether the Garritys owned the loft, not whether the use they sought to make of it was appropriate.

5. The Association also claims that the court erred when it provided that "[n]othing in [its] opinion is to be construed as having effect on state or local laws and/or condominium rules and regulations which pertain to the use of the loft area (as opposed to the issue of ownership) in Unit 14F." It is unclear on what basis the Association claims this is grounds for vacating the judgment. The court's judgment does not specifically preclude the application of any rule or regulation. The Association is free to seek enforcement of the building codes it asserts the Garritys are violating.