2005 ME 29

**RELIANCE NATIONAL INDEMNITY et al.**

v.

**KNOWLES INDUSTRIAL SERVICES, CORP. et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 18, 2004.
Decided: Feb. 23, 2005.

---

222

A. Richard Bailey, Esq. (orally), Cozen O'Connor, Philadelphia, PA, Neal F. Pratt, Esq., Peter S. Black, Esq., Verrill & Dana, LLP, Portland, for plaintiffs.

Gerard O. Fournier, Esq. (orally), Portland, for Knowles Industrial Services Corp.

David P. Very, Esq. (orally), Norman, Hanson & DeTroy, Esq., Portland, for Nutec Industrial Chemical, Inc.

David P. Silk, Esq. (orally), Patricia A. Hafener, Esq., Curtis Thaxter Stevens Broder & Micoleau LLC, Portland, for Camger Chemical Systems, Inc.

Philip M. Coffin, Esq. (orally), Teresa M. Cloutier, Esq., Lambert Coffin, Portland, for Clarence E. Smith, Inc.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] This appeal stems from claims associated with a fire that destroyed Saco's First Parish Congregational Church, UCC, in August 2000. The fire was caused by an employee of Knowles Industrial Services, Corp., which had contracted to remove lead paint from and repaint the exterior of the Church. Reliance National Indemnity, Federal Insurance Co., Fireman's Fund Insurance Co., and Wassau Employers Insurance Co.—subrogating insurers of the Church—appeal from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*). The court found that the waiver of subrogation in the Church's contract with Knowles barred the insurers' claims. The insurers argue that the summary judgment was improper because (1) the court made impermissible determinations of fact; (2) the court erred in enforcing the waiver of subrogation because it is void as against public policy; and (3) the court erred in applying the waiver of subrogation to Nutec Industrial Chemical, Inc., Clarence E. Smith, Inc., and Camger Chemical Systems, Inc. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The construction contract between the Church and Knowles contains the following provision: "The Owner and Contractor waive all rights against each other, separate contractors, and all other subcontractors for damages caused by fire or other perils to the extent covered by Builder's Risk or any other property insurance, except such rights as they may have to the proceeds of such insurance."

[¶ 3] The paint stripper used by Knowles to remove the lead paint from the exterior of the Church was manufactured and distributed by Nutec Industrial Chemical, Inc., Clarence E. Smith, Inc., and Camger Chemical Systems, Inc. (hereinafter referred to collectively as "the chemical defendants").[1] A Knowles employee caused the fire that destroyed the Church by bringing a cigarette or open flame within ten feet of a section of the Church to which large quantities of the paint stripper had been applied earlier that day.

[¶ 4] The Church submitted claims for its losses to Reliance National Indemnity, Federal Insurance Co., Fireman's Fund Insurance Co., and Wassau Employers In-

---

1. Camger Chemical Systems, Inc. manufactured the paint stripper for Nutec Industrial Chemical, Inc. Clarence E. Smith, Inc. distributed the Nutec paint stripper.

surance Co. (hereinafter referred to collectively as "Reliance") totaling almost $15,000,000 and received payments from the insurers for about half that amount. As a subrogee, Reliance then brought a suit in the Church's name against Knowles and the chemical defendants seeking to recover damages pursuant to M.R. Civ. P. 17(a). As to Knowles, the complaint alleged willful and wanton misconduct, negligence, breach of contract, and breach of warranty. As to the chemical defendants, the complaint alleged strict liability, negligence, and breach of warranty.

[¶ 5] Knowles and the chemical defendants moved for a summary judgment. The court entered a partial summary judgment in favor of Knowles and the chemical defendants, and against the Church, to the extent that the Church's damages were covered by property insurance. The court found that the waiver of subrogation barred the Church's claims.

[¶ 6] Upon Reliance's motion, the court later joined Reliance as a named party to the suit. Then, after all of the Church's claims had either been dismissed or settled, the court issued its final judgment. The court ordered that its prior partial summary judgment against the Church was now final against Reliance because Reliance's claims were subrogated claims for which judgment had previously been entered in favor of Knowles and the chemical defendants, and because all of the Church's claims had been dismissed with prejudice. This appeal followed.

## II. DISCUSSION

[¶ 7] We review an entry of summary judgment for errors of law, viewing the evidence in the parties' statements of material facts and any record references therein in the light most favorable to the party against whom the judgment was entered. *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174. We uphold the judgment "if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926. An issue is "genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *Univ. of Me. Found. v. Fleet Bank of Me.*, 2003 ME 20, ¶ 20, 817 A.2d 871, 877 (quotation marks omitted). A fact is "material if it could potentially affect the outcome of the case." *Id.*

### A. Whether the Court Made Impermissible Determinations of Fact

[¶ 8] Reliance argues that the court's entry of summary judgment was improper because the court made impermissible determinations of fact. Reliance contends that genuine issues of material fact exist with respect to whether Knowles misrepresented its qualifications and intentions in order to obtain the contract from the Church. As subrogee of the Church, Reliance is bound by the Church's statement of material facts and record references.

[¶ 9] Whether Knowles misrepresented its qualifications and intentions is material because Reliance argues that Knowles's misrepresentation is cause to void the contract between Knowles and the Church. Misrepresentation is an affirmative defense for which the Church had the burden of proof. *See Kuperman v. Eiras*, 586 A.2d 1260, 1261 (Me.1991). When a plaintiff has the burden of proof on an issue, a court may properly grant summary judgment in favor of the defendant if it is clear that the defendant would be entitled to a judgment as a matter of law if the plaintiff presented nothing more than was before the court at the summary judg-

ment hearing. *Champagne v. Mid–Me. Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. Because it had the burden of proof with respect to misrepresentation, the Church had to establish a prima facie case for each element of the defense in order to avoid a summary judgment. *See id.*

▪ [¶ 10] Reliance predicates its misrepresentation argument on two assertions. First, Reliance asserts that Knowles misrepresented its intent to comply with all pertinent federal and state regulations because Knowles was unaware that a distinct body of standards applied to the restoration of historic properties. Second, Reliance asserts that Knowles misrepresented its qualifications because, although Knowles warranted that it would employ only qualified personnel, none of the workers assigned to the Church project had any experience in historic preservation.

[¶ 11] Assuming for the sake of argument that the project constituted "historic preservation," as Reliance claims, the Church's statement of material facts and supporting record references neither alleged nor pointed to any evidence that Knowles was unaware of any pertinent regulations,[2] that Knowles's employees were not qualified, or that Knowles misled the Church regarding its qualifications. In other words, the Church alleged that it

relied on Knowles's representations, but it never expressly asserted that Knowles misrepresented itself. The fact that Knowles was subsequently negligent does not establish that it had previously misrepresented its qualifications and intentions.

[¶ 12] Because the Church failed to adduce evidence that Knowles misrepresented its qualifications or its intentions in its statement of material facts, it failed to establish a prima facie case for misrepresentation. Furthermore, the contract between Knowles and the Church contains an integration clause that precludes the implication of any extrinsic promises. Thus, the court did not make impermissible determinations of fact in its entry of a summary judgment.

B.  Whether the Waiver of Subrogation Is Void As Against Public Policy

▪ [¶ 13] A waiver of subrogation is a provision by which parties to a contract relieve each other of liability to the extent each is covered by insurance, thereby shifting the risk of loss to an insurer. *See Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 16, 756 A.2d 515, 519; *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 994–95 (Me.1983). We have held that "waivers of subrogation are encouraged by the law and serve important social goals: encouraging parties to anticipate risks and to

2.  Contrary to Reliance's assertions, the testimony of Andrew Lawson, Knowles's senior project engineer, reflects that Lawson did not know that the Maine Historic Preservation Commission had awarded a grant to the Church to help fund the project. Lawson testified that he was aware that the Church had received a grant but that he did not know "what that grant was for." Therefore, Lawson did not have "actual notice" that the project entailed historic preservation work. Moreover, Lawson's testimony does not indicate that he was unaware of any applicable guidelines. In response to being asked what codes and standards governed the project,

Lawson first identified those that applied "from a safety standpoint." Then Lawson answered a question about particular standards. He was not asked again what general standards applied to the contract. Lawson was asked whether the fact that "a grant was issued by the State of Maine [had] any significance" and responded that it did not, but the question was so broad that his response cannot serve as evidence that he was unaware of any applicable guidelines. Thus, no testimony was elicited that Lawson was unaware of any pertinent state or federal codes and regulations.

procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity." *Acadia Ins. Co.*, 2000 ME 154, ¶ 18, 756 A.2d at 520. Reliance attempts to carve out a public policy exception to the general rule that waivers of subrogation are enforceable. Specifically, Reliance contends that public policy precludes the enforcement of the waiver of subrogation in this case based on Knowles's willful and wanton misconduct or its violation of a positive statutory duty, or because enforcement will be harmful to the interests of society.

### 1. Willful and Wanton Misconduct

■ [¶ 14] Reliance argues that the waiver of subrogation is unenforceable because of Knowles's willful and wanton misconduct.[3] Reliance observes, "[I]t is well settled that an exculpatory clause is unenforceable in the face of claims of gross negligence or willful and wanton misconduct." Reliance asserts that adopting a similar approach with respect to waivers of subrogation would comport with our precedent because we have recognized that public policy concerns are heightened when there are allegations of wanton misconduct and have tailored our holdings accordingly.

■ [¶ 15] Gross negligence or willful and wanton misconduct generally renders exculpatory provisions void. *Lloyd v. Sugarloaf Mountain Corp.*, 2003 ME 117, ¶ 21, 833 A.2d 1, 7; RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981); 8 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 19:23 (4th ed.1998); 15 GRACE MCLANE GIESEL, CORBIN ON CONTRACTS § 85.18 (Joseph M. Perillo ed., Matthew Bender & Co., Inc., rev. ed.2003) (1962). Nonetheless, that principle is inapposite to waivers of subrogation. The rule exists for exculpatory clauses to ensure that "a party injured by another's gross negligence will be able to recover its losses." *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 317 F.Supp.2d 336, 341 (S.D.N.Y.2004). In cases involving waivers of subrogation, however, there is no risk that an injured party will be left uncompensated, and it is irrelevant to the injured party whether it is compensated by the grossly negligent party or an insurer. *Id.* Thus, in *Acadia Insurance Co.* we distinguished between a party indemnifying another for its own negligence and parties allocating risk to insurers. 2000 ME 154, ¶ 18, 756 A.2d at 520.

[¶ 16] Other courts that have specifically addressed Reliance's arguments in the context of waivers of subrogation are split as to whether parties can bar subrogated claims for gross negligence. *Compare St. Paul Fire & Marine Ins. Co.*, 317 F.Supp.2d at 342, *and Behr v. Hook*, 173 Vt. 122, 787 A.2d 499, 504 (Vt.2001), *with Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp.*, 277 F.Supp.2d 304, 308 (S.D.N.Y.2003), *Charter Oak Fire Ins. Co. v. Trio Realty Co.*, No. 99 Civ. 10827(LAP), 2002 WL 123506, at *4, 2002 U.S. Dist. LEXIS 1442, at *12 (S.D.N.Y. Jan. 31, 2002), *Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 136 F.Supp.2d 253, 256 (S.D.N.Y.2001), *and Colonial Props. Realty Ltd. P'ship v. Lowder Constr. Co.*, 256 Ga.App. 106, 567 S.E.2d 389, 394 (2002).

---

**3.** Reliance alleges that Knowles's conduct was willful and wanton in light of the following: despite Knowles's awareness of the highly flammable properties of the paint stripper, its employees routinely smoked in close proximity to the Church and even on the scaffolding itself; one of Knowles's employees ignited the fire by bringing a cigarette or flame within ten feet of a section of the Church to which large quantities of the paint stripper had recently been applied; and Knowles violated and deviated from numerous governing codes and industry practices.

[¶ 17] Adopting the approach advocated by Reliance would require us to distinguish between varying degrees of negligence. We have rejected the concept of gradations of negligence, *Cratty v. Samuel Aceto & Co.*, 151 Me. 126, 131, 116 A.2d 623, 627 (1955) (stating that "[t]here are no degrees of care"), and we decline to change our approach with respect to waivers of subrogation for two reasons.

[¶ 18] First, waivers of subrogation deter litigation among parties to complicated construction contracts. *See St. Paul Fire & Marine Ins. Co.*, 317 F.Supp.2d at 341. Significantly, as counsel for Knowles observed during oral argument, the real injured party in this case—the Church—is not a party to this appeal because the waiver of subrogation did what it was intended to do: it allowed the Church to resolve its claims quickly. The Church was made whole to the limits of its insurance and it was not divested of a remedy. Were we to hold that parties cannot bar subrogated claims for gross negligence or willful and wanton misconduct, these benefits will evaporate, as the parties will have the incentive to litigate the question of whether a heightened standard of negligence applies.

[¶ 19] Second, waivers of subrogation have a beneficial economic effect that furthers the public interest. They help parties avoid the higher costs that result from having multiple insurance polices and overlapping coverage. *Behr*, 787 A.2d at 504. In addition, because insurers can account for such waivers when setting premiums, *Acadia Ins. Co.*, 2000 ME 154, ¶ 14, 756 A.2d at 518, there is still an economic incentive for parties to refrain from committing gross negligence or willful and wanton misconduct.

[¶ 20] Thus, contrary to Reliance's argument, we conclude that public policy favors enforcement of waivers of subrogation even in the face of claims of gross negligence or willful and wanton misconduct.

### 2. Reliance's Other Policy Arguments

[¶ 21] Reliance also argues that the waiver of subrogation is void as against public policy because it involves a violation of a positive statutory duty or because it is harmful to the interests of society, i.e., it undermines the strong public interest in protecting and preserving historic properties. We reject the "violation of a positive statutory duty" argument in light of the distinction between waivers of subrogation and exculpatory clauses discussed above. *See Penn Ave. Place Assocs. v. Century Steel Erectors, Inc.*, 798 A.2d 256, 259 (Pa.Super.2002) (distinguishing between waivers of subrogation and exculpatory clauses and finding that a violation of a fire ordinance did not render a waiver of subrogation unenforceable because the tortfeasor satisfied his debt to the injured party by obtaining insurance). We reject the second argument in light of the fact that, as noted above, insurers can account for waivers of subrogation when setting premiums. Thus, there is still an economic incentive for parties to refrain from negligent activity, however described. Hence, the waiver of subrogation in the contract between the Church and Knowles is not void as against public policy, and the court did not err as a matter of law in enforcing it.

### C. Application of the Waiver of Subrogation to the Chemical Defendants

[¶ 22] Reliance argues that the court erred as a matter of law in applying the waiver of subrogation at issue to the chemical defendants for two reasons: (1) they do not fall within the waiver's definitions of "separate contractors" or "all other subcontractors," and (2) even if the waiver applies to them, the court should not have enforced it in this case because waivers of subrogation cannot serve to protect parties

from breach of warranty or strict liability claims.

### 1. "Separate Contractors" or "All Other Subcontractors"

[¶ 23] The waiver of subrogation applies to the Church and Knowles, as well as to "separate contractors" and "all other subcontractors." The parties disagree whether the chemical defendants—manufacturers and suppliers of the paint stripper used by Knowles—constitute "separate contractors" or "all other subcontractors" and, thus, whether the waiver of subrogation applies to them.

[¶ 24] When interpreting a contractual provision, we first determine whether the provision is ambiguous. *See Villas by the Sea Owners Ass'n v. Garrity,* 2000 ME 48, ¶ 9, 748 A.2d 457, 461. A contractual provision is ambiguous "if it is reasonably possible to give that provision at least two different meanings." *Id.* Interpretation of an unambiguous provision is a matter of law, and the provision is "given its plain, ordinary, and generally accepted meaning." *Id.* "Construction of an ambiguous contract is a question of fact determined by the fact-finder and reviewed for clear error." *Id.* We avoid interpretations that would render any particular contractual provision meaningless, *SC Testing Tech., Inc. v. Dep't of Envtl. Prot.,* 688 A.2d 421, 424 (Me.1996), and examine the contract in its entirety to determine whether an "apparent ambiguity is resolved elsewhere in the document," *Guilford Transp. Indus. v. Pub. Utils. Comm'n,* 2000 ME 31, ¶ 18, 746 A.2d 910, 915.

[¶ 25] Although the waiver of subrogation makes no reference to product manufacturers, distributors, or suppliers, other provisions of the contract distinguish between subcontractors and suppliers.[4] Reliance argues that the fact that other provisions of the contract draw such a distinction makes it clear that the chemical defendants do not fall within the waiver's definitions of "separate contractors" or "all other subcontractors." Reliance asserts that this conclusion is supported by commonly accepted distinctions between the terms "subcontractor" and "supplier" or "materialman." Alternatively, Reliance urges that, at a minimum, the contract language is ambiguous and is a question of fact that cannot be resolved by summary judgment.

[¶ 26] We are not persuaded by Reliance's arguments. The broad scope of the waiver—i.e., usage of the terms "separate contractors" and "all other subcontractors"—suggests that it was intended to apply to a broad range of parties. *See Crow–Williams, I v. Fed. Pac. Elec. Co.,* 683 S.W.2d 523, 524 (Tex.App.1984). This view is consistent with that taken by other courts that have concluded, with respect to waivers of subrogation, product manufacturers or suppliers, in addition to those who furnish labor, fall within the definitions of "subcontractor" or "separate contractors."[5] *See, e.g., S. Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320, 333 (1979); *Crow–Williams,* 683 S.W.2d at 524; *Anderson Hay & Grain Co. v. United Dominion Indus., Inc.,* 119 Wash.App. 249, 76 P.3d 1205, 1208 (2003). The fact

---

**4.** For example, section 2.2 states, "The Owner may require the Contractor to furnish appropriate affidavits of payment or lien waivers from the Contractor and/or its suppliers and subcontractors of any tier with respect to any prospective or past payment." Likewise, section 2.4 states, "Final payment shall be paid

... upon satisfactory evidence having been received by the Owner that all ... subcontractors and material suppliers have been paid to date ...."

**5.** Although the definitions of "subcontractor" or "separate contractors" that we adopt in the context of waivers of subrogation are

that other sections of the contract distinguish between "suppliers" and "subcontractors" has little bearing because the waiver of subrogation has a broader purpose than those sections. *See Willis Realty Assocs. v. Cimino Constr. Co.*, 623 A.2d 1287, 1288 (Me.1993) (noting that courts have liberally construed waivers of subrogation). Finally, holding that waivers of subrogation do not apply to product suppliers and manufacturers would render their protection illusory. If insurers can bring claims against product suppliers and manufacturers, then suppliers and manufacturers should be expected, in turn, to bring contribution claims against the parties to the waiver.[6]

[¶ 27] Therefore, we conclude that the waiver's use of the terms "separate contractors" and "all other subcontractors" is unambiguous and, by its very terms, includes the chemical defendants in this case.[7]

### 2. Waivers of Subrogation and Warranty or Strict Liability Claims

[¶ 28] Reliance contends that even if the waiver of subrogation is applicable to the chemical defendants, the court should not have enforced it in this case because such waivers cannot serve to protect parties from breach of warranty or strict liability claims.

[¶ 29] Courts that have addressed the issue have held that unqualified waivers of subrogation serve to waive an insurer's right to all claims, including warranty and strict liability claims. *See, e.g., Bastian v. Wausau Homes, Inc.*, 635 F.Supp. 201, 204–05 (N.D.Ill.1986); *Town of Silverton v. Phoenix Heat Source Sys. Inc.*, 948 P.2d 9, 13–14 (Colo.Ct.App.1997); *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill.App.3d 651, 98 Ill.Dec. 470, 494 N.E.2d 592, 601 (1986). In this case the waiver contains a single qualification because section 7.1 of the contract expressly reserves the Church's warranty claims against the "Contractor." Because the chemical defendants are not "the Contractor," as that term is employed in the contract, however, the qualification does not apply to them. Thus, the court did not err as a matter of law in enforcing the waiver of subrogation with respect to warranty or strict liability claims.

The entry is:

Judgment affirmed.

---

broad enough to encompass all of the chemical defendants, the fact that a representative of two of them, Kirk Smith, instructed Knowles employees regarding the use of the paint stripper and visited the work site on several occasions, presents an even stronger argument that those two fall within the definition of "subcontractor" or "separate contractor."

6. Reliance counters that Maine has a long-established policy of allowing defendants to pursue contribution claims even where the plaintiff is barred from recovery. *See, e.g., Bedell v. Reagan*, 159 Me. 292, 296–97, 192 A.2d 24, 26–27 (1963). The policies implicated by the right to contribution by joint tortfeasors addressed in *Bedell* are different from those implicated by contractual waivers of subrogation, however, and, to further the policies underlying waivers of subrogation, we decline to extend the rationale of *Bedell* to the present case.

7. This holding renders meritless Reliance's argument that the waiver of subrogation cannot be applied to the chemical defendants because they were not bargaining parties to the contract. Inclusion of the terms "separate contractors" and "all other subcontractors" demonstrates that the waiver was not meant to be limited only to the contracting parties and that it was intended to benefit parties such as the chemical defendants. *See Devine v. Roche Biomedical Labs.*, 659 A.2d 868, 870 (Me.1995).