STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-17-30 ✓

CLAUDE R. GRENIER,                    )
                                      )
         Plaintiff,                   )
                                      )
v.                                    )        ORDER ON DEFENDANT'S
                                      )        MOTION TO DISMISS
PATRIOT SUBARU OF SACO, INC.,         )
                                      )
         Defendant.                   )
                                      )

Defendant Patriot Subaru of Saco, Inc. has moved to dismiss Plaintiff Claude R. Grenier's complaint pursuant to Maine Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, Defendant's motion is granted.

## BACKGROUND

According to Plaintiff's complaint, on or about October 6, 2016, Plaintiff went to Defendant's place of business to purchase a new Subaru XV Crosstrek sport utility vehicle. (Compl. ¶ 3.) Plaintiff alleges that, during negotiations, he informed Defendant's employee that he would not purchase the vehicle if his monthly payment were more than the monthly payment on his current vehicle that he was trading in. (*Id.* ¶ 4.) Plaintiff contends that Defendant's employee "Jackie" informed him that the vehicle could be financed for eighty-four months with a monthly payment $332.67 per month. (*Id.*) Plaintiff contends he agreed to those terms. (*Id.* ¶ 5.) Plaintiff asserts that Defendant's employee prepared documents for Plaintiff's and Defendant's employee's signatures. (*Id.* ¶ 6.) Plaintiff signed the documents. (*Id.* ¶¶ 7-9.) Plaintiff later discovered that his actual monthly payment was $432.75. (*Id.* ¶ 10.)

Plaintiff filed a four-count complaint against Defendant in February 2017 in York County Superior Court. Defendant filed a motion to dismiss the complaint for failure to state a claim

along with three exhibits on May 8, 2017. Plaintiff filed his opposition to the motion on May 25, 2017. Defendant timely replied on June 8, 2017. This case was subsequently transferred to the Business and Consumer Docket.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Maine Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the complaint in the light most favorable to the plaintiff to determine whether the complaint sets forth sufficient allegations that would entitle the plaintiff to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is warranted when it appears beyond a doubt that the claimant is not entitled to relief under any set of facts that the claimant might prove in support of his or her claim. *Id.*

Ordinarily on a motion to dismiss for failure to state a claim, only the allegations in the complaint are considered by the court. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. If the court considers material outside of the pleading, the court must convert the motion into one for summary judgment under Maine Rule Civil Procedure 56. M.R. Civ. P. 12(b). However, in limited circumstances, the court may consider certain extraneous documents without converting a motion to dismiss to one for a summary judgment. *Moody*, 2004 ME 20, ¶ 9, 843 A.2d 43. The court may consider "official public documents, documents that are central to the plaintiff's claims, and documents referred to in the complaint, without converting a motion

2

to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *Id.* ¶ 10.

## ANALYSIS

### I.  Extraneous Documents

In support of its motion to dismiss, Defendant has submitted three extraneous documents for the court's consideration. (Def. Mot. Dismiss 5.) Defendant contends the court may consider all three documents without converting the motion to dismiss to one for summary judgment under the exceptions discussed above. (*Id.*) First, Defendant has submitted a one-page document containing various financing terms and the handwritten number "332.67". (Def. Ex. A.) Defendant refers to this document as the "Option Sheet." (Def. Mot. Dismiss 5.) Defendant contends that this document is the "piece of paper" containing financing terms on which Defendant's employee "Jackie" wrote the figure $332.67 referenced in ¶ 4 the complaint. (Def. Mot. Dismiss 5; Compl. ¶ 4.) Defendant also contends the Option Sheet is central to Plaintiff's claims. (Def. Mot. Dismiss 5.) In his complaint, Plaintiff avers that he agreed to "terms and conditions" explained by Defendant's employee and written on the "piece of paper." (Compl. ¶ 5.)

Second, Defendant submits an oversized, one-page document titled "Retail Installment Sale Contract Simple Finance Charge", detailing the financing terms for Plaintiff's vehicle purchase and signed by Plaintiff, which Defendants refer to as the "Financing Contract." (Def. Ex. B; Def. Mot. Dismiss 6.) Defendant has also submitted one-page document detailing the total costs and payments for the vehicle and signed by Plaintiff. (Def. Ex. C.) The document also contains a space for the signature of a witness and a notary. (*Id.*) The document was not signed by a witness or notarized. (*Id.*) Defendant refers to this document as the "Invoice." (Def.

3

Mot. Dismiss 6.) Defendant contends that the Financing Contract and the Invoice are referenced in the complaint. (*Id.*) Defendant asserts the Financing Contract and the Invoice are the "documents for the Plaintiff's and the Defendant's employee's signature" referenced to in ¶ 6, the "papers" placed on the desk for Plaintiff to sign referenced to in ¶ 7, and the "documents" that Defendant's employee did not explain referenced to in ¶ 8. (*Id.*) Defendant contends the Invoice is also the document specifically referenced in ¶ 8 as "a documents that required the signature of the Defendant's employee [that] was not notarized." (*Id.*) Defendant contends the Financing Contract and the Invoice are central to Plaintiff's claims that Defendant breached its agreement with Plaintiff or misrepresented the financing terms that induce Plaintiff to accept the contract. (Def. Mot. Dismiss 6; Compl. ¶¶ 7-11.)

In his opposition, Plaintiff does dispute that the Option Sheet, Financing Contract, and Invoice submitted by Defendant are the documents referenced in his complaint and that they are central to his claims. (Pl. Opp'n Mot. Dismiss 1.) Moreover, Plaintiff does not object to the courts consideration of these extraneous documents. (*Id.*) Therefore, the court shall consider the Option Sheet, Financing Contract, and Invoice without converting the motion to one for summary judgment.

## II.     Count I: Breach of Contract and Fraudulent Misrepresentation

Count I of Plaintiffs complaint appears to assert claims for breach of contract and fraudulent misrepresentation. The court addresses each in turn.

### A.     Breach of Contract

To maintain a claim for breach of contract, plaintiff must allege: (1) the parties had a legally binding contract; (2) the defendant breached a material term of the contract; and (3) defendant's breach caused the plaintiff to suffer damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10,

4

89 A.3d 1088. Under the Maine Uniform Commercial Code ("UCC"), a contract for the sale of goods for the price of $500.00 or more is not enforceable unless the agreement is in writing sufficient to indicate a sale has been made and signed by party against whom enforcement is sought. 11 M.R.S. § 2-201(1). "Preliminary negotiations are not sufficient to create a contract." *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 11, 87 A.3d 732.

The interpretation of an unambiguous contract is a question of law for the court. *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me. 1996). In interpreting a written contract, the court must consider the entire agreement. *Estate of Barrows*, 2006 ME 143, ¶ 13, 913 A.2d 608. The court shall give unambiguous contract terms their plain, ordinary, and generally accepted meaning. *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457. The court considers extrinsic evidence of the parties' intent only if the contract is found to be ambiguous. *Id.* ¶ 10.

Plaintiff's complaint alleges the following. Defendant's employee "Jackie" informed Plaintiff that the vehicle could be financed for eighty-four months with a monthly payment of $332.67 per month. (Compl. ¶ 4.) "Jackie" wrote this figure on a piece of paper. (*Id.*) Plaintiff agreed to purchase the vehicle on those terms and conditions. (*Id.* ¶ 5.) The actual monthly payment to the lender was $432.75 per month. (*Id.* ¶ 10.)

Foremost, any oral representations by "Jackie" cannot constitute a binding agreement under § 2-201(1) the UCC. As discussed above, the "piece of paper" referenced in ¶ 4 of the complaint is the Option Sheet submitted by Defendant. (Def. Ex A.) The Option Sheet contains printed information regarding the terms of several different payment plans and appears to lists several different monthly payment amounts. (*Id.*) The Option Sheet contains the handwritten

5

number "332.67".[1] (*Id.*) The Option Sheet is not signed by either party. Based on upon its plain terms, the Option Sheet clearly contains negotiation terms and is not a binding contract. Moreover, because the Option Sheet is not signed, it is not enforceable contract under § 2-201(1) of the UCC.

The Financing Contract and the Invoice, however, are a binding contract between Plaintiff and Defendant for the purchase of the vehicle. The Financing Contract and the Invoice unambiguously set forth the price, financing terms, and obligations of both parties. (Def. Exs. B-C.) The Financing Contract also contains an integration clause stating, "This contract contains the entire agreement between you and us relating to this contract." (Def. Ex. B.) Both the Financing Contract and the Invoice are signed by Plaintiff. (Def. Exs. B-C.) Pursuant to the plain and unambiguous terms of both the Financing Contract and the Invoice, Plaintiff's monthly payment for the vehicle was $432.75 for eighty-four months. (*Id.*)

Because any oral representation by "Jackie" and the Option Sheet do not constitute a binding contract, and because the parties clearly entered into a written contract under which Plaintiff's monthly payment was $432.75 per month, Plaintiff has failed to state a claim for breach of contract under Count I.

B.    Fraudulent Misrepresentation

In his opposition, Plaintiff asserts, "In Counts I and II of the Complaint Plaintiff has not alleged or claimed fraud or negligent misrepresentation, but that Defendant's employee practiced

---

[1] It appears that, at some point in time, someone attempted to change the handwritten number on the option form "332.67" to "432.67". (Def. Ex. A.) It is unclear who attempted to change the handwritten number or when. Plaintiff complaint contains no allegations regarding the change. Plaintiff's complaint only alleges that "Jackie" wrote "332.67" on a piece of paper and that he agreed to that term. (Compl. ¶¶ 4-5.) The Option Sheet also contains printed financing terms, which state that under the "A La Carte" payment plan, Plaintiff's payments would be $432 for eighty-four months. (Def. Ex. A.)

6

a deception upon him by a physical or manual act." (Pl. Opp'n Mot. Dismiss 1.) A claim for "deception" is simply a claim for fraud by another name. *See Braley v. Powers*, 92 Me. 203, 209, 42 A. 362, 364 (1898). Thus, notwithstanding Plaintiff's contention, the court shall analyze Plaintiff's claim for "deception" as one for fraud.

To sustain a claim for fraud, the plaintiff must allege: (1) the defendant made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of its truth or falsity; (4) for the purpose of inducing the plaintiff to act in reliance upon it; and (5) the plaintiff justifiably relied upon the fact as true to their detriment. *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707. A failure to disclose may rise to the level of a false representation if the plaintiff demonstrates (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose. *McGeechan v. Sherwood*, 2000 ME 188, ¶ 61, 760 A.2d 1068. Regarding the final element, reliance is unjustified if the plaintiff knows the representation is false or its falsity is obvious to the plaintiff. *Dowling v. Bangor Hous. Auth.*, 2006 ME 136, ¶ 16, 910 A.2d 376. Pursuant to Maine Rule of Civil Procedure 9, allegations of fraud must be pled "with particularity." M.R. Civ. P. 9(b).

Plaintiff's complaint alleges the following. During the course of the negotiations, Plaintiff informed Defendant's employee that he would not purchase the vehicle if his monthly payment was more than his current payment for the vehicle that he was trading in. (Compl. ¶ 4.) Defendant's employee "Jackie" informed Plaintiff that the vehicle could be financed for eighty-four months with a monthly payment of $332.67 per month. (*Id.*) "Jackie" wrote that figure down on a pieced of paper. (*Id.*) Plaintiff agreed to purchase the vehicle on those terms and conditions. (*Id.* ¶ 5.) Defendant's employee prepared the documents for Plaintiff's and Defendant's employee's signatures. (*Id.* ¶ 6.) When Defendant's employee returned to the desk

where Plaintiff was seated, the employee placed the papers on the desk and indicated where Plaintiff was to sign the papers. (*Id.* ¶ 7.) Defendant's employee did not explain the documents or the legal effect of the documents. (*Id.* ¶ 8.) One of the documents that required the signature of Defendant's representative was not notarized. (*Id.*) Immediately after Plaintiff signed the documents, Defendant's employee folded the documents and placed them in an envelope, which she handed to Plaintiff. (*Id.* ¶ 9.) Plaintiff did not have an opportunity to read the documents while on Defendant's premise. (*Id.*) Plaintiff's actual monthly payment was $432.75 per month. (*Id.* ¶ 10.) "By reason of the deception perpetrated on the Plaintiff and unfair treatment by the Defendant's employee, the Plaintiff has been damaged…" (*Id.* ¶ 11.)

Even if Defendant's employee did misrepresent Plaintiff's monthly payment as $332.67 during negotiations, Plaintiff cannot demonstrate justifiable reliance because its falsity was obvious. "As a matter of general contract law, parties to a contract are deemed to have read the contract and are bound by its terms." *Francis v. Stinson*, 2000 ME 173, ¶ 42, 760 A.2d 209. Moreover, the Financing Contract unambiguously states, "NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it." (Def. Ex. B.) The Financing Contract further states that by signing the contract, "You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You agree you received a completely filled-in copy when you signed it." (*Id.*) Plaintiff did not object to the court's consideration of the Financing Agreement or the Invoice. (Pl. Opp'n Mot. Dismiss.) Plaintiff does not contend that he did not sign the Financing Agreement or the Invoice. (Pl. Opp'n Mot. Dismiss.) In his complaint, Plaintiff concedes he signed the documents presented to him by Defendant's employee. (Compl. ¶ 9.) Thus, as a mater of law, Plaintiff is deemed to have read the Financing Agreement and the Invoice and is bound by their terms.

When the terms of a written contract clearly contradict an earlier misrepresentation, the falsity of the misrepresentation is obvious, and any reliance on the early misrepresentation by a party to the contract is unjustified. *See Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209. The Financing Contract and the Invoice clearly and unambiguously state that Plaintiff's monthly payment would be $432.75 per month for eighty-four months. The falsity any earlier misrepresentation by Defendant's employee should have been obvious to Plaintiff. Accordingly, any reliance by Plaintiff on an earlier misrepresentation was unjustified. Therefore, Plaintiff cannot state a claim for fraud under Count I.[2]

## III.    Count II: Breach of Contract and Fraudulent Misrepresentation

Count II of the complaint also appears to assert claims for breach of contract and fraudulent misrepresentation. Plaintiff alleges the following. Plaintiff and Defendant's salesperson "Kevin" discussed the payoff amount for Plaintiff's trade-in vehicle. (Compl. ¶ 13.) "Kevin" estimated the payoff amount based on Plaintiff's current lease payment of $423.00 per month.[3] (*Id.*) Plaintiff does not alleged what the pay-off amount was estimated to be. After speaking with Honda Finance, Kevin determined that the actual payoff amount for the trade-in vehicle was $1,300.00 less than what he had estimated. (*Id.* ¶ 14.) Plaintiff contends that Defendant failed to deduct $1,300.00 from the amount financed for the new car. (*Id.* ¶ 15.) Count II of Plaintiff's complaint fails for the same reasons as Count I. The court addresses breach of contract and fraud in turn.

---

[2] In his opposition, Plaintiff alleges additional acts of "deception" by Defendant's employee. (Pl. Opp'n Mot. Dismiss 2.) None of these allegations are set forth in the complaint or the documents considered under the *Moody* exceptions. Therefore, these allegations are not properly before the court and cannot be considered. *See Moody*, 2004 ME 20, ¶ 9, 843 A.2d 43.

[3] In his opposition, Plaintiff asserts that his current lease payment was only $389.75 per month. (Pl. Opp'n Mot. Summ. J. 2.)

9

A.    Breach of Contract

As discussed above, the interpretation of an unambiguous contract is a question of law for the court. *Thayer Corp.*, 675 A.2d at 516. The court shall give unambiguous terms in a written contract their plain, ordinary, and generally accepted meaning. *Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457. Here, Plaintiff signed the Financing Contract and the Invoice, which constitute a binding written contract between the parties. (Def. Exs. B-C.) Because there is a written contract, any preliminary statements by "Kevin" do not constitute a contract term. *See Estate of Lewis*, 2014 ME 34, ¶ 11, 87 A.3d 732. The Financing Contract and the Invoice unambiguously state that the payoff amount for Plaintiff's trade-in vehicle was $25,224.74. (Def. Ex. B-C.) That amount was included in total purchase price for the new vehicle. (*Id.*) Plaintiff unambiguously agreed to that amount as the payoff amount for the trade-in vehicle. Therefore, Plaintiff cannot state a claim for breach of contract under Count II for failing to reduce the payoff amount by $1300.00.

B.    Fraudulent Misrepresentation

As discussed above, as a matter of law, parties to a contract are deemed to have read the contract and are bound by its terms. *See Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209. When the terms of a written contract clearly contradict an earlier misrepresentation, the falsity of the misrepresentation is obvious, and any reliance on the earlier misrepresentation by a party to the contract is unjustified. *See id.* Both the Financing Contract and the Invoice clearly state that the payoff amount for Plaintiff's trade-in vehicle was $25,224.74. (Defs. Ex. B-C.) That amount was clearly included in total purchase price for the new vehicle agreed to by Plaintiff. (*Id.*) The falsity of any earlier misrepresentation by "Kevin" regarding the payoff amount for Plaintiff's trade-in vehicle should have been obvious, and any reliance by Plaintiff on an earlier

10

misrepresentation was unjustified. Therefore, Plaintiff has failed to state a claim for fraud under Count II.

## IV. Count III: Violations of the Maine Consumer Credit Code

In Count III of the complaint, Plaintiff contends that Defendant's conduct is a violation of § 5-115 of the Maine Consumer Credit Code ("MCCC"), which permits Plaintiff to rescind the sale of the vehicle. (Compl ¶¶ 18-19.) Plaintiff also contends that Defendant violated § 5-117 of the MCCC by promising Plaintiff he could insurance from Defendant for $1,355.00, which included gap insurance. (*Id.* ¶ 20.) Plaintiff contends Defendant charged Plaintiff an additional $561.00 for gap insurance. (*Id.* ¶ 21.)

### A. Section 5-115

Section 5-115 of the MCCC provides:

> A creditor or a person acting for him may not induce a consumer to enter into a consumer credit transaction by misrepresentation of a material fact with respect to the terms and conditions of the extension of credit. A consumer so induced may rescind the sale, lease or loan or recover actual damages, or both.

9-A M.R.S. § 5-115. The MCCC provides that, unless displaced by particular provisions of the Act, general principles of law and equity, including the law of fraud and misrepresentation, supplement the MCCC's provisions. *Id.* § 1-103.

As discussed above, under the law of fraud and misrepresentation, a plaintiff's reliance on the misrepresentation must be justifiable in order hold a defendant liable. *Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707. When the terms of a written contract clearly contradict an earlier misrepresentation, the falsity of the misrepresentation is obvious, and any reliance on the earlier misrepresentation by a party to the contract is unjustified. *See Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209.

Plaintiff was presented with and signed the Financing Contract and the Invoice, which unambiguously set forth the financing terms. (Def. Exs. B-C.) Plaintiff is deemed to have read the Financing Contract and the Invoice is bound by their terms. *See Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209. Therefore, as discussed above, any reliance on the earlier misrepresentation regarding the financing terms is unjustified. Therefore, Plaintiff has failed to state a claim for misrepresentation under § 5-115 of the MCCC.

B.      Section 5-117

Section 5-117 of the MCCC provides that a seller may not (1) "Misrepresent any material fact relating to the terms or conditions of sale;" (2) "Create an impression that is false or the seller does not believe to be true;" and (3) "Promise performance that the seller does not intend to perform or knows will not be performed." 9-A M.R.S. § 5-117. As discussed above, Plaintiff alleges that Defendant promised that Plaintiff could purchase insurance for $1,355.00, which included gap insurance. (Compl. ¶ 20.) Plaintiff contends Defendant charged Plaintiff an additional $561.00 for gap insurance. (*Id.* ¶ 21.)

Pursuant to the plain terms of both the Financing Contract and the Invoice, Plaintiff was charged $561.00 for gap insurance. (Defs. Ex. B-C.) The Financing Contract and the Invoice contain no other charges for insurance. (*Id.*) Thus, contrary to his allegations, Plaintiff was not charged an "additional" $561.00 for gap insurance on top of a charge for $1,355.00. Plaintiff was charge only $561.00 for gap insurance. Thus, Defendant did not engage is a misrepresentation, create a false impression, or make a false promise by charging Plaintiff an "additional" $561.00.

To the extent that Plaintiff is claiming that Defendant engaged misrepresentation, created a false impression, or made a false promise by not selling Plaintiff insurance for the full price of

12

$1,355.00, Plaintiff's claim must fail. As discussed above, general the principles of law and equity, including the law of fraud and misrepresentation, supplement the MCCC's provisions. *Id.* § 1-103. Plaintiff is deemed to have read the Financing Contract and the Invoice is bound by their terms. *See Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209. When the terms of a written contract clearly contradict an earlier misrepresentation, the falsity of the misrepresentation is deemed obvious, and any reliance on the earlier misrepresentation by a party to the contract is unjustified. *See id.* The Financing Contract and the Invoice plainly state Plaintiff was to be charged only $561.00 for gap insurance. (Defs. Ex. B-C.) The Financing Contract and the Invoice contain no other charges for insurance. (*Id.*) Thus, Plaintiff should have known Defendant was not selling him insurance for $1,355.00. Plaintiff should have known defendant was only selling him gap insurance for $561.00. Therefore, Plaintiff has failed to state claim for violation of § 5-117 of the MCCC.

## V.      **Count IV: Violation of the Maine Unfair Trade Practices Act**

Lastly, Plaintiff contends that Defendant's conduct was a violation of the Maine Unfair Trade Practices Act ("MUTPA"). (Compl. ¶ 23.) The MUTPA declares "unfair and deceptive acts or practices in the conduct of any trade commerce" to be unlawful. 5 M.R.S. § 207. Any person who purchases or leases goods or property primarily for personal, family, or household purposes and suffers any loss as a result of unfair or deception may bring an action for damages, restitution, or other equitable relief. *Id.* § 213(1). An act is "unfair" if it causes or is likely to cause substantial injury that is not reasonably avoidable by consumers, and the harm is not outweighed the benefits to consumers or competition. *MacCormack v. Brower*, 2008 ME 86, ¶ 5 n.2, 948 A.2d 1259. An act is "deceptive" if it constitutes "a material representation, omission,

13

act or practice that is likely to mislead consumers acting reasonably under the circumstances." *Id.*

Plaintiff's MUTPA claim is not based on any additional allegations. Plaintiff's MUTPA claim is based on the same conduct alleged in his other claims. (Compl. ¶¶ 22-23.) As discussed above, Plaintiff was presented with the Financing Contract and the Invoice, which clearly set forth the terms of sale and financing. (Def. Ex. B-C.) Plaintiff is deemed to have read the Financing Contract and the Invoice and is bound by their terms. *See Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209. Because the terms of the Financing Contract and the Invoice are clear and unambiguous, the falsity of any prior misrepresentation or misleading action by Defendant's employees regarding the terms of sale and financing should have been obvious. *See id.* Thus, any prior misrepresentation, omission, act, or practice by Defendant's employees were not likely to mislead Plaintiff. Moreover, because written terms of sale and financing were clear and unambiguous, substantial injury was reasonably avoidable by reading the Financing Contract and the Invoice. *See Bangor Publ'g Co. v. Union St. Mkt.*, 1998 ME 37, ¶ 7, 706 A.2d 595 (stating because contract provisions were clear and unambiguous, failure to explain contract terms was not unfair or deceptive under the MUTPA). Therefore, Plaintiff has failed to state a claim for violation of the MUTPA.

## CONCLUSION

Because Plaintiff Claude R. Grenier's complaint fails to state any claim for relief under any theory, Defendant Patriot Subaru of Saco, Inc.'s motion to dismiss pursuant to Maine Rule of Civil Procedure 12(b)(6) for failure to state a claim is **GRANTED**.

14

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 8/2/17

_____
Richard Mulhern
Judge, Business & Consumer Court