STATE OF MAINE                              SUPERIOR COURT
Cumberland, SS                              Civil Action
                                            Docket No. CV-07-448
                                            TED -CUM - 10/31/2007

BLUE STAR CORPORATION,

· Plaintiff

v.                              **ORDER ON MOTION TO DISMISS**

CKF PROPERTIES, LLC and
TIMOTHY FLANNERY

DONALD L. C
LAW LIB

FEB 06 2

## I. BEFORE THE COURT

This matter comes before the court on defendant Timothy Flannery's (Flannery)

motion to dismiss pursuant to M.R.Civ.P. 12(b)(6).

## I. PROCEDURAL HISTORY AND BACKGROUND

This dispute arises from a sale of property in the City of Westbrook. According

to the plaintiff Blue Star Corporation's (Blue Star) complaint, it entered into a contract to

purchase real estate from CKF Properties, LLC (CKF) on April 17, 2006. As the sole

member of CKF, Flannery acted on behalf of the corporation in negotiating and signing

the agreement. The agreement required CKF to ensure that none of its tenants would

remain on the property beyond a certain date after closing. Well after the deadline for

the removal of tenants, Blue Star discovered that the tenants had not been notified that

they were expected to vacate the property, and that at least one tenant had entered into

an agreement with Blue Star to stay for an indefinite time period. Blue Star asserts that

it lost redevelopment financing as a result of legal disputes with the tenants and was

ultimately forced to sell the property without realizing the profit that it had expected.

Blue Star has filed a complaint alleging breach of contract, negligence, and fraud against both Flannery and CKF. CKF answered and Flannery filed the present motion to dismiss.

## II. DISCUSSION

### A. Standard of Review.

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. In determining whether a motion to dismiss should be granted, the court considers "the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832. The facts alleged are treated as admitted, and they are viewed "in the light most favorable to the plaintiff." *Id.* The court should dismiss a claim only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he [or she] might prove in support of his [or her] claim." *Id.* (quoting *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246)).

### B. Breach of Contract

Blue Star alleges in its complaint that the purchase and sale agreement was a contract between Blue Star and *both* CKF and Flannery. Because Blue Star has included a copy of the contract with its complaint, the court may consider it along with the facts alleged in the complaint. *See Me. Mun. Employees Health Trust v. Maloney*, 2004 ME 51, ¶ 5, 846 A.2d 336, 338. The contract clearly states in the first paragraph that the agreement is between Blue Star and CKF. There is no mention of Flannery personally, and Flannery did not personally guarantee the agreement. Moreover, § 15(i) of the contract defines the seller as "a duly organized limited liability company." Again, there

2

is no mention of Flannery in his personal capacity. Thus, the only parties to the contract are Blue Star and CKF.

Blue Star argues that it may pierce the corporate veil if it is able to establish through the discovery process that CKF is Flannery's alter ego. However, Blue Star asserts that it is unnecessary to plead piercing of the corporate veil in the complaint. Because corporations are generally treated as "separate legal entities with limited liability," a plaintiff must show "(1) some manner of dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recognized the separate corporate existence" in order to pierce the corporate veil. *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶¶ 5-6, 720 A.2d 568, 571. While it may not be necessary to specifically state in a complaint that a plaintiff is seeking to pierce the corporate veil,[1] the plaintiff would surely have to allege *something* to show that it is entitled to relief from Flannery personally.

Blue Star asserts that fraud is a basis for piercing the corporate veil, and it has alleged fraud in its complaint. Specifically, Blue Star asserts that CKF (and Flannery) made false representations concerning when they would have the property free of all tenants. Blue Star also alleges that the defendants knew these statements were false at the time of contract negotiations. Flannery points out that the Law Court has said that "more stringent standards" apply in the decision to pierce the corporate veil in a contract dispute because a party to a contract with a corporation "is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity." *Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me. 1996).

---

[1] See *Dineen v. Ward*, 2005 Me. Super. LEXIS 60 (March 17, 2005), stating, "while it is true that the plaintiff must prove the two elements necessary to pierce the corporate veil . . . there is no law in Maine that requires that those two elements be specifically pled in the complaint."

3

On the other hand, the Law Court has also explained that piercing may be appropriate when the corporate form is "used to cover fraud or illegality, or to justify a wrong." *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n. 5 (Me. 1981). While it is not entirely clear what type of fraud would justify piercing, Professor Franklin Gevurtz has discussed the difference between mere breach of contract and fraud by the individual corporate agent:

> The fact that the corporation does not perform does not turn the promise into fraud, or else all breaches of contract would create a claim for fraud, and there could never be limited liability with respect to contract creditors. On the other hand, there is fraud if, at the time of the promise, the controlling shareholder intended to have the company default. This follows from a well-established doctrine in the common law of fraud and deceit. This doctrine is that promises contain within them an implied statement as to the speaker's present intention with respect to performance. If the speaker never intended to perform, then this implied statement is false. Franklin A. Gevurtz, *Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil*, 76 Or. L. Rev. 853, 872.

It is impossible to tell at this stage of the proceedings whether or not Blue Star will ultimately be able to recover personally from Flannery on a fraud theory in the context of a breach of contract claim. The burden of proof is on Blue Star to show that Flannery never intended to perform his contractual duty at the time he entered into the agreement, and that an unjust result would occur if the court chose to treat CKF as a separate legal entity. However, the court determines that Blue Star has met the minimum requirements necessary to survive a motion to dismiss.

## C. Negligence and Fraud

It is possible for a corporate officer to be personally liable for tortious conduct even without piercing the corporate veil. *See Advanced Construction Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189, 195. According to the Law Court, "individual liability stems from participation in a wrongful act, and not from facts that must be found in order to pierce the corporate veil." *Id.* (citations omitted). Agency principles can also apply to

4

hold a corporate agent personally liable. *Id.* ¶¶ 16-17, 901 A.2d 189 at 196. Although Blue Star did not allege in the complaint that Flannery is an agent of CKF, it did allege that he is CKF's sole member; thus, it is not appropriate to dismiss Flannery as a defendant in the negligence or fraud actions, as the complaint "avers every essential element of recovery" for each tort. *Richards v. Soucy*, 610 A.2d 268, 270 (Me. 1992).

## IV. DECISION AND ORDER

The clerk will make the following entries as the Decision and Judgment of the court:

- Defendant Timothy Flannery's Motion to Dismiss is denied.

SO ORDERED.

DATE: ___October 31, 2007___

Thomas E. Delahanty II
Justice, Superior Court

F COURTS
.nd County
ox 287
ie 04112-0287

THOMAS HALLETT ESQ
PO BOX 7508
PORTLAND ME 04112

F COURTS
nd County
ox 287
ie 04112-0287

BRENDAN RIELLY ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, SS.




SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-07-448

BLUE STAR CORPORATION,

    Plaintiff

v.

CKF PROPERTIES, LLC and
TIMOTHY FLANNERY,

    Defendants

## DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

MAY 28 2008

## I. BEFORE THE COURT

This matter comes before the court on the plaintiff's motion for partial summary judgment as to the issue of breach on Counts I and II (breach of contract and negligence).[1] No action is currently requested on Count III, the claim for fraud.

## II. PROCEDURAL HISTORY AND BACKGROUND

The following facts are not in dispute. The plaintiff, Blue Star Corporation (Blue Star), entered into a contract to purchase real estate in Westbrook from CKF Properties, LLC (CKF) on April 17, 2006. The agreement required CKF to ensure that none of its tenants would remain on the property beyond a certain date after closing. The parties[2] closed on the property on August 18, 2006 and reaffirmed in writing CKF's obligation to leave the property free of tenants within forty-five days, or by October 3. In spite of this

---

[1] The defendants have also filed a motion for summary judgment in which they argue that Blue Star is unable to show damages. Blue Star has asked for an extension of time to oppose the motion so that it may take the depositions of two individuals. Further discussion of this issue is presented in herein.

[2] The defendants insist that only CKF was a party to the transaction, not Flannery personally. This issue was the subject of Flannery's earlier motion to dismiss. *See Blue Star Corp. v. CKF Properties, LLC*, 2007 Me. Super. LEXIS 226 (Oct. 31, 2007). Although Flannery was not a party to the contract, he could potentially be personally liable if the court to pierced the corporate veil. *Id.* However, such a remedy is only available if Blue Star is able to show that Flannery fraudulently entered into the contract on CKF's behalf. *Id.* Blue Star is not asking for summary judgment on its fraud claim, so it is not addressed at this time.

-1-

obligation, two tenants remained on the property after the deadline for their removal. In fact, on August 24, CKF entered into an agreement with one of the tenants, Postal Express, which would allow the tenant to stay until at least October 31, 2006. The other tenant, Corporate Purchasing Resource, Inc. (CPR), was a tenant at will.

Approximately two weeks after the deadline for the removal of tenants, Blue Star changed the locks at the property. The next day, after some discussions between representatives of the various companies involved, the tenants were permitted back onto the property. Postal Express left the property on October 31, 2006, and CPR left during the middle of November. Blue Star asserts that it lost redevelopment financing as a result of the tenants and was ultimately forced to sell the property without realizing the profit that it had expected.

On August 6, 2007, Blue Star filed a complaint alleging breach of contract, negligence, and fraud against both Flannery and CKF. CKF answered on August 27, and Flannery filed a motion to dismiss on August 29, which was denied by this court on October 31. Blue Star filed the present motion for partial summary judgment on January 24, 2008, and CKF filed its opposition thereto on March 19, after this court granted an extension of time to respond.

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v.*

*Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## B. Breach of Contract and Waiver

CKF has admitted to breach of contract by failing to remove all of the tenants from the building within the time period specified. Nevertheless, it contends that it has raised a genuine factual issue concerning whether Blue Star waived the breach by its actions following the deadline for tenant removal. Waiver is a question of fact. *Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 919. To survive summary judgment, CKF must therefore submit facts that could reasonably show "a voluntary or intentional relinquishment of a known right." *Associated Builders, Inc. v. Coggins*, 1999 ME 12, ¶ 8, 722 A.2d 1278, 1281. Additionally, CKF must show that Blue Star's actions caused CKF to believe a waiver had occurred. *Interstate Indus.*, 355 A.2d at 919. Thus, the inquiry is not solely focused on the actions of Blue Star, but also on the effect of those actions on CKF. *Id.*

It is undisputed that CKF breached the agreement almost immediately after the closing date when it entered into a new agreement with Postal Express that would allow the tenant to stay beyond the date all tenants were to be removed. The presence of CPR beyond the deadline also constituted a breach on the part of CKF. Because Blue Star changed the locks at the property without notice to CKF or the tenants two weeks after the tenants were to have quit the premises, it is clear that at least until that point,

- 3 -

Blue Star did not intend to relinquish any contractual right. However, CKF argues that once the lockout occurred, Blue Star indicated its willingness to allow the tenants to stay in the building for a short period of time.

According to CKF, Blue Star's attorney, Jeffrey Selser (Selser), told CPR's attorney, Horace Horton (Horton) that although Blue Star would not be willing to negotiate a long-term lease, there was no urgency to vacate the property. CKF also alleges that Blue Star's subsequent (and current) attorney, Thomas Hallett (Hallett) told Horton that Blue Star would cooperate with CPR and asked how long CPR would need. Additionally, CKF contends that Hallett assured Horton that there was no urgency for CPR to leave because redevelopment of the surrounding vacant property could occur while CPR remained. Blue Star allegedly made a similar statement to Jim Brown, a loan officer from whom Blue Star was seeking financing for redevelopment. Finally, CKF claims that two CPR representatives told CKF that Blue Star was negotiating a short-term lease agreement with CPR. Because Blue Star allowed the tenants to remain on the property well past the date for their removal, CKF argues that Blue Star waived its right to enforce the removal provision of their contract.

Blue Star maintains that it never waived any right, but instead continued to insist that the tenants vacate the premises. It argues that it decided to avoid a legal confrontation with the tenants after Postal Express held a press conference and threatened legal action. Instead, it contends that it followed Selser's advice to seek a remedy for the holdover from CKF, the party contractually bound to remove the tenants. Not only does it deny CKF's characterizations of the conversations between the various attorneys, but also it asserts that it never negotiated any lease agreement with either tenant. It has submitted affidavits from both of its attorneys concerning their representations to Horton in which they contend that they made clear Blue Star's

- 4 -

desire to have the tenants leave and their inability to negotiate any lease agreement. It also points to two letters concerning the breach of contract sent from Hallett to CKF's attorney.

Although it is undisputed that no lease agreement was ever reached between Blue Star and CPR, it is not certain if Blue Star in fact communicated an intent to negotiate such an agreement or otherwise acquiesced to CPR's continued presence at the property. Because the answer to the question of whether Blue Star acted in a manner that was inconsistent with its right to enforce the removal provision of the contract depends upon an assessment of the credibility of multiple witnesses, including the parties themselves, the court cannot say as a matter of law that Blue Star did not waive the breach.[3]

## C. Negligence

Although Blue Star asserts that it is entitled to summary judgment on its negligence claim, it has not made a prima facie case for this particular cause of action. To prevail on a claim for negligence, a plaintiff must show that the defendant breached a duty that was owed to the plaintiff, proximately causing damages. *Durham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577, 579 (citations omitted). Blue Star has not alleged any duty owed by CKF other than a contractual one, which is not analogous to a duty of care owed according to tort principles. *See Adams v. Buffalo Forge Co.*, 443 A.2d 932, 938-39 (Me. 1982) (stating "tort obligations arising from status relationships and contract obligations arising from consensual relationships create separate and distinct predicates

---

[3] Blue Star also argues that *Kirkham v. Hansen*, 583 A.2d 1026 (Me. 1990), provides authority for the absence of waiver as a matter of law in this case. In that case, the mortgagees of certain property successfully sued for foreclosure when the mortgagors defaulted on their payments pursuant to the promissory note. *Id.* at 1026. Unfortunately, Blue Star's reliance on *Kirkham* is misplaced. While it is true that the Law Court found that the plaintiffs "did nothing inconsistent or misleading with respect to their right to accelerate the mortgage debt," the Court also noted that the plain language of the contract between the parties prevented the plaintiffs' late acceptance of payments from operating as a waiver. *Id.* at 1027. There is no such clause in the contract between the parties in this case.

-5-

of liability"). Because Blue Star has failed to show that CKF owed it any duty of care beyond the contractual obligations, it is not entitled to summary judgment on this claim. If Blue Star ultimately cannot establish any other duty owed by CKF, judgment on Count II should be for CKF as a matter of law.

## D. Blue Star's Rule 56(f) Request for Additional Discovery

The defendants have also filed a motion for summary judgment in which they assert that the plaintiff is unable to show that the breach of contract caused any damages. Although Blue Star has alleged that it lost redevelopment financing as a result of the breach, CKF has submitted affidavits from two loan officers who deny that the tenant situation was the reason that Blue Star was denied. Pursuant to M.R. Civ. P 56(f), Blue Star filed a motion to enlarge time in which to oppose the defendants' motion so that it may depose the loan officers. CKF's attorney has informed the court that it does not believe the additional depositions are necessary, although counsel for plaintiff indicated at oral argument that they have been scheduled for May 14th.

To receive additional time under Rule 56(f), a party must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist," and "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Bay View Bank, N.A. v. Highland Golf Mortgagees Realty Trust*, 2002 ME 178, ¶ 22, 814 A.2d 449, 454-55 (quotations omitted). Here, Blue Star has submitted an affidavit from Hallett that claims merely that the testimony of these two witnesses is important and relevant to the issues raised by the complaint and the defendants' motion for summary judgment. The affidavit does not explain the facts that Blue Star expects to glean from such testimony, nor does it address how the testimony will impact the outcome of the defendants'

motion. Because Blue Star has not met the requirements for continued discovery on this matter, the Rue 56(f) request should be denied.

## IV. DECISION AND ORDER

The clerk will make the following entries as the Decision and Orders of the court:

**A.** The plaintiff's Motion for Partial Summary Judgment is denied.

**B.** The plaintiff's request to conduct additional discovery pursuant to M.R.Civ.P. 56(f) is denied.

**C.** The plaintiff shall respond to defendant's Motion for Summary Judgment on or before May 15, 2008.

SO ORDERED.

DATED: May 9, 2008

Thomas E. Delahanty II
Justice, Superior Court

- 7 -

COURTS
nd County
x 287
e 04112-0287

BRENDAN RIELLY ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

COURTS
d County
x 287
3 04112-0287

THOMAS HALLETT ESQ
PO BOX 7508
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-07-448

BLUE STAR CORPORATION,

    Plaintiff

    v.

CKF PROPERTIES, LLC and
TIMOTHY FLANNERY,

    Defendants

DECISION ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

This matter is before the court on defendants' Motion for Summary Judgment
and Motion in Limine to exclude the testimony of Joseph Paulin.[1]  The plaintiff filed a
surreply memorandum and a motion to strike portions of CKF's reply memo.

## I. PROCEDURAL HISTORY AND BACKGROUND

The following facts are not in dispute.  On April 17, 2006, the plaintiff, Blue Star
Corporation (Blue Star), entered into a contract to purchase real estate in Westbrook
from CKF Properties, LLC (CKF).  The agreement required CKF to ensure that none of
the tenants would remain on the property beyond a certain date after closing.  Blue Star
intended to turn the mill into condominiums or apartments.  The parties closed on the
property on August 18, 2006 and reaffirmed in writing CKF's obligation to leave the
property free of tenants within forty-five days (October 3).  In spite of this obligation,

---

[1]  The Motion in Limine to exclude the testimony was filed on August 27, 2008. The 21 day period for a
formal response from the plaintiff, M.R.Civ.P. 7(c)(2), had not expired as of the date of the Trial
Management Conference (September 3) or the date of oral argument (September 4) on defendant's
summary judgment motion.  Because this case appears on the jury trial list for the current trial session of
September/October, the court requested plaintiff's counsel to address the motion at oral argument on
September 4th.

-1-

two tenants remained on the property after the deadline. Approximately two weeks after the deadline for the removal of tenants, Blue Star changed the locks at the property. One of the tenants in the building then held a press conference at which the tenant stated that he had a lease that "allowed him to stay for a year" and that Blue Star's President, Nicholas Kampf (Kampf), had purchased the building and "under contract must honor the leases in place." After some discussions between representatives of the various parties, the tenants were permitted back onto the property. The remaining tenants eventually left the property by mid-November.

Before closing on the sale of the property, Blue Star sought financing for its acquisition and planned development. Toward this end, Kampf approached various lenders during the months of May, June, and July of 2006. After pursuing financing from TD Banknorth, Ocean National Bank, and Norway Savings Bank without success, Blue Star began seeking private financing. Kampf met with Art Girard (Girard), the President and sole director of Alpine Realty Corporation, and toured the property with him. At that time, Girard agreed to provide financing for the acquisition of the property, but did not agree to finance the property redevelopment.[2]

In August or September of 2006, Kampf also contacted Scott Lalumiere (Lalumiere), the Vice President at Pioneer Capital Corporation, seeking private financing for the redevelopment of the property. Lalumiere contacted Jim Brown (Brown) of Greystone USA (Greystone), a financial services and private investment company, to see if Greystone would be interested in being a funding partner with Pioneer Capital. Lalumiere, Brown, and Kampf met in September 2006 to discuss the project.

---

[2] The plaintiff disputed this fact at oral argument: He asserts that Kampf states he was told by Girard that he (Girard) would provide financial assistance for the redevelopment. Counsel cites to plaintiff's reply to defendants' Statement of Material Facts, ¶ 53. *See* further discussion, *infra*.

Shortly after the meeting, Lalumiere and Brown saw televised news reports about Kampf allegedly kidnapping his daughter. Greystone's loan committee subsequently rejected the request for financing due to concerns about the notoriety regarding Kampf's arrest. Lalumiere tried to save the deal by suggesting that Blue Star convey the property into a trust for their benefit or to a third party. Instead, in mid-October Blue Star decided to sell the property. In April 2007 it was sold to the Westbrook Housing Authority (WHA) for $2 million realizing a profit of $800 - 900,000. Four months later Blue Star filed a complaint alleging breach of contract, negligence, and fraud against CKF and Timothy Flannery, the sole principal of CKF. CKF answered and Flannery filed a motion to dismiss which was denied.[3]

A motion for partial summary judgment by Blue Star was subsequently denied as was plaintiff's motion to conduct additional discovery under M.R.Civ.P. 56(f).[4]

CKF and Flannery now move for summary judgment on the primary grounds that, even if the defendants breached the purchase and sale agreement, the plaintiff has failed to come forward with any admissible evidence demonstrating that CKF caused any damages to plaintiff and that there is no admissible evidence that Flannery is personally liable.

As a supplement to its opposition to defendants' motion, plaintiff filed a surreply memorandum and motion to strike portions of CKF's reply memorandum

On August 27, CKF filed a motion in limine to exclude the witness testimony of Joseph Paulin.

---

[3] *See* Order dated October 31, 2007.

[4] *See* Order dated May 9, 2008.

- 3 -

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

Although the parties have set out over 150 separate statements of material facts, the issues are relatively narrow.[5]

### B. Damages

As the plaintiff and party opposing summary judgment, it is Blue Star's burden to establish a prima facie case for every element of each of its causes of action. *Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, P9, 711 A.2d 842, 845.

Although the question of causation is factual, summary judgment is appropriate "if there is so little evidence tending to show that the defendant's act or omissions were

---

[5] In *Stanley v. Hancock County Commissioners*, 2004 ME 157, 864 A.2d 169, the Law court reiterated the purpose of summary judgment practice and railed against the filing of excessive, repetitive and non-material facts as needlessly complicating the summary judgment process.

the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff." *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759.

### 1. Loss of Financing

Blue Star asserts that as a result of the tenant's holdover, it suffered a number of pecuniary damages, including the loss of financing for redevelopment. Blue Star argues that it was ultimately forced to sell the property without realizing the full profit that it expected. The damages claimed amount to the difference between Blue Star's profit on the sale to the WHA and what it would have earned had it been able to redevelop the property as originally planned. CKF counters that Blue Star is unable to show that the breach of contract caused any damages. CKF submitted affidavits from Girard and Lalumiere who deny that the tenant holdover was the reason that Blue Star was denied financing for redevelopment. Blue Star now argues that even if it were not able to obtain financing from Girard or Lalumiere, it could have received financing from Paulin, but for the tenant holdover.

### a. Joseph Paulin's Affidavit Testimony

A fact issue is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of the facts at trial. *Inkel*, 2005 ME 42, ¶ 4, 869 A.2d at 747. A party opposing a motion for summary judgment may not create an issue of material fact to defeat summary judgment by submitting an affidavit disputing that party's own prior sworn statement that the proponent of the motion offers to support the motion. See *Schindler v. Nilsen*, 2001 ME 58, ¶ 9, 770 A.2d 638, 641-42; *Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735. "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit

that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Zip Lube, Inc.*, 709 A.2d at 735.

Blue Star submitted an affidavit from Paulin, Kampf's father-in-law, with its opposition to summary judgment, in which it avers that Paulin expressed an interest in financing the redevelopment project to Kampf as early as late September or early October. Paulin, an experienced developer, further states that he lost interest in the project after the tenant press conference, because of the potential for delay and loss represented by the tenants. At no time, however, did Kampf and Paulin actually reach an agreement or understanding.[6]

CKF argues that Blue Star cannot generate a genuine issue a material fact by contradicting itself. CKF asserts that Kampf's interrogatory answers and deposition testimony contain sworn statements that contradict Blue Star's present argument. Specifically, CKF argues that when Kampf was asked to list all individuals with knowledge of the facts and claims in their complaint, Kampf did not name Paulin. Kampf also failed to name Paulin when asked to "identify any and all communications" with third parties "relating to the redevelopment of the Property [or his] financing." In response to both questions, Kampf named only Girard, Brown, and Lalumiere. In further support of its argument, CKF asserts that Kampf's deposition testimony contradicts Blue Star's argument that Paulin was willing to provide financing in the following excerpt:

> Q. And before I- before we proceed on that, is there anybody else, other than Art Girard, Greystone or the three banks that you listed, that you approached for financing for the development of the project?

---

[6] *See* affidavit of Joseph Paulin dated May 15, 2008, ¶ 8: "I let Nick Kampf know . . . that I would finance it . . . *if he asked me to.*" (emphasis added).

-6-

A.     No, I guess that is about it for that time. Yeah.[7]

Blue Star contends that Kampf's response to the question pertained only to the time frame of July, and that Kampf did not name Paulin because their discussions took place in September and October.

Although Blue Star's argument may be a reasonable interpretation of that one exchange, all of Kampf's omissions, taken as a whole, amount to contradictory testimony. Kampf fails to mention Paulin every time he is asked about potential lenders, even though he repeatedly lists Girard and Lalumiere as people with whom he discussed financing. It is not until the defendants filed a motion for summary judgment accompanied by affidavits from Girard and Lalumiere, asserting that the tenant holdover had nothing to do with their refusal to lend money to Blue Star, that Blue Star introduced Paulin. Blue Star does not provide adequate explanation as to why Kampf failed to mention Paulin when asked to list all of the people with whom he had discussed financing.[8]

The discovery deadline in this case was May 27, 2008.[9] Notwithstanding defendants' inquiries, Paulin's role as a player and financial backer was not disclosed until May 15, 2008 when the plaintiff, after several extensions to reply to defendants' motion for summary judgment, filed Paulin's affidavit and disclosed him as a witness.

---

[7]  In defendant's Rule 56(h)(3) statement of the facts, the defendant misquotes Kampf's response as "No, I guess that is about it for *the* time. Yeah." (emphasis added). Blue Star filed a surreply pleading and motion to strike portions of the defendant's motion containing this misquote, arguing that CKF deliberately changed the word "*that*" to "*the*" to better suit its argument. Further discussion of this issue is located at the end of this document.

[8]  At oral argument, counsel for plaintiff attempted to explain this discrepancy by stating that he (counsel) disclosed Paulin's role as soon as his client made him aware of it and that his client didn't believe he had to account for the involvement of family members even though the defendants asked about "everybody else."

[9]  *See* Rule 16(a) Scheduling Order dated September 27, 2007, ¶ 3, and Order for docket entry.

That affidavit, ¶ 7, and plaintiff's reply to defendant's Statement of Material Facts, ¶ 43, clearly indicate that any conversation about financing the redevelopment occurred seven or eight months earlier.

Blue Star listed Nicholas Kampf and Art Girard as expert witnesses. The Rule 26(b)(4) designation was filed on January 9, 2008. It very clearly states that Girard would testify to subject matters very similar to Paulin.[10] This clearly indicates plaintiff's knowledge of the importance of evidence regarding a commitment to finance development; however, the Rules 26 designation of an expert is not sufficient grounds to base an opposition to summary judgment.

Pursuant to M.R.Civ.P. 26(e)(1) and (2), "a party", not just counsel, is obligated to timely supplement and amend discovery information. In addition, the Rule 16(a) Scheduling Order, ¶ 3, requires that discovery was to be <u>completed</u> by May 27, 2008 and that it is to be provided "within the period allowed by the rules, but in advance of the deadline," to allow opposing parties the opportunity to respond.

**b. Girard's role**

There is no factual dispute that Girard eventually decided not to provide financing for Blue Star's property redevelopment. The parties disagree, however, as to whether the presence of the tenants affected Girard's decision. Girard has stated in an affidavit that he was never interested in financing the redevelopment and never conveyed any interest to Kampf.[11] Blue Star denies this assertion and offers another

---

[10] Art Girard of Alpine Realty 'would have been prepared to offer a construction loan to Blue Star for the planned redevelopment . . . [but] by mid-October Alpine Realty was no longer interested . . . due to complications presented by the holdover tenant issues . . . ."

[11] *See* affidavit of Art Girard dated March 10, 2008:
¶ 5. " . . . I agreed to provide financing to Mr. Kampf . . . for the acquisition of the [p]roperty. I specifically told Mr. Kampf prior to the loan closing that *I was not interested in providing financing for the subsequent redevelopment of the [p]roperty.*" (emphasis added)
¶ 6. "*I was not interested in financing the redevelopment of property* into residential apartments or condominiums . . . ." (emphasis added)

- 8 -

version of Kampf and Girard's negotiations. According to an affidavit submitted by Kampf, in early October 2006, Girard told Kampf that it "looked like" he would do the development loan.

Girard's statement, if presumed to be true, would not create a binding agreement at the time that it was offered. Even if Blue Star could prove that Girard said that it "looked like" he would provide the loan, which is unlikely given that Girard denies ever saying this, it would not provide sufficient evidence that Girard would have provided financing, but for the tenant holdover.

## 2. Other Damages

Blue Star asserts that even if lost profits due to a loss of financing are not taken into account, it has introduced evidence it suffered other damages as well, including: security costs; interest costs on carrying an empty building without being able to move forward with redevelopment; locksmith costs; costs incurred for damage caused to the property by the holdover tenants; and individual member time and attorney's fees related to the holdover tenants.

There is no question that CKF breached its contract with Blue Star. Blue Star has presented sufficient evidence that the breach resulted in damages other than lost profits due to a loss of financing.

Although CKF and Flannery are the moving parties, summary judgment may be rendered against the moving party on the issue of liability alone, even where there is a dispute as to the amount or claim for damages. M.R.Civ.P. 56(c). The same summary judgment standard applies.

¶ 7. ". . . . I had told Mr. Kampf at the site visit in the spring of 2006 that *I was not interested in providing financing for the redevelopment* of the [p]roperty." (emphasis added)

¶ 8. "Mr. Kampf called me three times after the loan closing . . . . I told him *I was still not interested in providing financing for the redevelopment* . . . ." (emphasis added)

¶ 10. "The presence of the tenants in the [p]roperty . . . played no part in my decision not to provide financing for the redevelopment. . . ."

In this case, CKF was required to have the tenants out of the premises by October 3, 2006: It did not. CKF is responsible for consequential and incidental damages for that breach.

## C. Blue Star's Surreply and Motion to Strike

Blue Star filed a surreply to CKF's reply memorandum Rule 56(h)(3) statement of facts, attempting to supplement its opposition to summary judgment with additional arguments, and correct deposition testimony that was misquoted by the defendants. Blue Star acknowledged that surreply pleadings are not authorized by the Maine Rules,[12] but argues that Maine courts have considered them in certain meritorious situations. *See Smith v. Campbell*, 2006 WL 1669664 (Me. Super.) (finding that a surreply should be considered because it was limited to issues of law and was correct).

Blue Star should not be permitted to submit additional arguments in a surreply. The facts here do not provide an exceptionally meritorious situation and Blue Star had an opportunity to make the argument in its primary opposition to summary judgment. Blue Star's objection as to the defendants misquoting Kampf's deposition testimony is unnecessary, as the court has considered an accurate copy of Kampf's deposition testimony in making its determination.

Motions to strike information contained in statements of material facts are not permitted under M.R. Civ. P 56(i).

## D. CKF's Motion in Limine

CKF's motion to exclude Paulin's testimony is moot because summary judgment is appropriate and Paulin's testimony is, therefore, no longer relevant.

---

[12] M.R. Civ. P. 7(a) states that "[n]o other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

## III. DECISION AND ORDER

The clerk will make the following entries onto the docket of this case as the Decision and Orders of the court:

**A.** Defendants' Motion for Summary Judgment is granted as to damages resulting from a loss of financing due to the tenant holdover.

**B.** Judgment is entered for defendant Timothy Flannagan individually.

**C.** Summary judgment is granted to plaintiff Blue Star on the issue of breach of contract as it applies to consequential and incidental damages.

**D.** Plaintiff's surreply memorandum is stricken as not permitted under the rules.

**E.** Plaintiff's Motion to Strike is dismissed as not permitted under the rules.

SO ORDERED.

DATED: September _8_ , 2008

Thomas E. Delahanty II
Justice, Superior Court

- 11 -

**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:



BRENDAN RIELLY ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:



THOMAS HALLETT ESQ
DAVID WEYRENS ESQ
PO BOX 7508
PORTLAND ME 04112