STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11-35

)
JAMES C. EBBERT, Court-appointed )
Receiver for Associated Grocers of Maine, )
Inc., )
)
                Plaintiff, )
)
      v. )
)
P&L COUNTRY MARKET, INC., )
)
            Defendant )
)

**ORDER**
(Motion for Attachment)

      Plaintiff James C. Ebbert, the court-appointed Receiver for the Associated Grocers of

Maine, Inc. (AGME),[1] moves, pursuant to M.R. Civ. P. 4A and 4B, for attachment and

attachment on trustee process of the real and personal property of Defendant P&L Country

Market, Inc. in the amount of $58,500.08, plus all allowable pre- and post-judgment interest and

other allowable expenses and costs of collection.

      Plaintiff filed this motion along with the complaint in this matter, in which complaint he

asserts four causes of action: 1) breach of contract for failure to pay amounts due on account

(Count I); 2) action on account annexed, pursuant to 16 M.R.S. § 355 (2010) (Count II); 3)

unjust enrichment (Count III); and 4) quantum meruit (Count IV). In each count, Plaintiff seeks

payment of $58,500.08, the balance of Defendant's customer account with AGME. The

Receiver's attachment motion is supported by the affidavit of the Receiver and asserts it is more

---

[1] Ebbert was appointed receiver of AGME by consent, *see Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, KENSC-CV-11-92 (Me. Super. Ct., Ken. Cty., Apr. 27, 2011), prior to that case's transfer to the Business and Consumer Court on October 5, 2011, *see Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, BCD-CV-11-36 (Me. Super. Ct., Cum. Cty., Oct. 5, 2011).

likely than not that the Receiver will prevail on one of his theories of recovery against P&L in the amount of the account balance.

In response to Plaintiff's complaint, Defendant filed an answer and three-count counterclaim, alleging: 1) breach of contract for failure to maintain properly P&L's capital account (Count I); 2) setoff for the balance of the amount owed with the amount in the capital account (Count II); and 3) fraud regarding the capital accounts and the financial health of AGME (Count III). Defendant alleges in its counterclaim that it was required to purchase stock in AGME and maintain a capital account with AGME with a balance in an amount equal to one week of accounts receivable for produce, in this case, $50,000. (Countercl. ¶ 5.) Defendant asserts it has demanded the balance of its capital account from the Receiver. (Countercl. ¶ 14.)

Defendant filed a written opposition to the attachment motion, in which opposition Defendant argues that Plaintiff has failed to demonstrate that it is not more likely than not that Plaintiff will prevail. Defendant first contends that the failure to supply the written contract between AGME and P&L is fatal to Plaintiff's attachment motion. Defendant further contends that the balance in the capital account is owed to P&L, and that the doctrines of setoff of mutual debts and recoupment preclude attachment.

Pursuant to M.R. Civ. P. 4A and 4B, the Court may approve an order of attachment or trustee process after notice to the defendant, a hearing, and

> upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c); *see* M.R. Civ. P. 4B(c) (containing nearly identical language regarding trustee process). The "more likely than not" standard is "greater than 50% chance of prevailing."

2

*Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996) (quotation marks omitted). An attachment motion or motion for trustee process must be supported by affidavits setting "forth specific facts sufficient to warrant the required finding and shall be made upon the affiant's own knowledge, information or belief." M.R. Civ. P. 4A(c), (i); *see* M.R. Civ. P. 4B(c) (requiring a motion for trustee process to be supported by affidavits meeting the requirements set forth in Rule 4A(i)).

Based on Plaintiff's affidavits and the account attached to the motion, the Court concludes that Plaintiff will recover judgment in an amount equal to or greater than $58,500.08, and there is no liability insurance, bond, or other security to satisfy the anticipated judgment. The amount sought is the sum of five invoices dated between April 20, 2011, and May 3, 2011. Defendant admits that it purchased products from AGME creating a debt to AGME (Def.'s Opp'n to Attachment 6), and Defendant does not dispute the balance on its customer account. Defendant's opposition centers on its counterclaim for setoff and affirmative defense of recoupment. The amount of attachment, however, cannot be offset by claims of the nonmoving party. *See Casco N. Bank, N.A. v. New Eng. Sales, Inc.*, 573 A.2d 795, 797 (Me. 1990) (explaining a defendant's own breach of contract claim cannot be considered as an offset when determining the amount of plaintiff's attachment); 2 Charles Harvey, Maine Civil Practice § 4A:2 at 273 (3d ed. 2011). Thus, the Court does not address Defendant's arguments regarding the capital accounts or any claim of setoff in its counterclaim. Further, because Plaintiff's action does not sound solely in contract, the failure to include the contract is not fatal to the motion as suggested by Defendant.[2]

---

[2] Defendant also contends that its affirmative defense of recoupment precludes an attachment in this case. Contrary to Defendant's argument, the Court is not convinced, on this record, that Defendant's capital account constitutes the same transaction as the alleged outstanding receivable.

3

The Court is, therefore, prepared to authorize an attachment of Defendant's property in the amount of $58,500.08. However, the Court is not convinced that both an attachment and an attachment on trustee process are necessary to provide Plaintiff with sufficient security should Plaintiff ultimately prevail in this matter. The Court will limit the attachment to specific property, in accordance with M.R. Civ. P. 4A(d), if Defendant demonstrates that certain property available for attachment "would, if sold to satisfy any judgment obtained in the action, yield to the plaintiff an amount at least equal to" $58,500.08. If Defendant would like the Court to consider an attachment on specific property, on or before January 11, 2012, Defendant shall submit the request with reliable proof of value of the property that Defendant proposes for attachment. Upon receipt of Defendant's request, the Court will decide whether an attachment limited to specific property is appropriate. If Defendant does not submit the request, the Court will issue an order granting to Plaintiff an attachment and attachment on trustee process.

Pursuant to M.R. Civ. P. 79(a), the clerk shall incorporate this Order into the docket by reference.

Dated: 12/29/11

Justice, Maine Business & Consumer Court

CV-11-35
James C. Ebbert, Court-Appointed Receiver for Associated Grocers of Maine, Inc. v.
P&L Country Market, Inc.

for Plaintiff:
Fred Bopp, Esq.
Perkins Thompson
One Canal Plaza Ste 900
Portland ME  04112

for Defendant
Joseph Goodman, Esq.
The Goodman Law Firm
537 Congress St
Portland ME  04112

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11-35
JCN-CUM - 2/15/2013 ✓

)
JAMES C. EBBERT, Court-appointed )
Receiver for Associated Grocers of Maine, )
Inc., )
)
Plaintiff, )
)
v. )
)
P&L COUNTRY MARKET, INC., )
)
Defendant )
)

**DECISION AND ORDER**
(Motions for Summary Judgment)

This matter is before the Court on Plaintiff's Motion for Summary Judgment, and on the

Cross-motion for Summary Judgment filed by the AG Shareholder Group (the Group). Plaintiff

is the court-appointed Receiver for Associated Grocers of Maine, Inc. (AGME), Defendant P &

L Country Market is a corporation located in Dexter, Maine, and is a former member and

customer of AGME. The Group constitutes approximately 30 other former members and

customers of AGME, which are parties to similar actions commenced by the Receiver.

The parties filed the motions in accordance with the Court's May 3, 2012, Scheduling

Order, by which the Court, after a conference with the parties, authorized discovery and the

filing of the pending motions on the following issue: whether Defendant is entitled to a setoff, in

the amount of the value of Defendant's capital account, against the amount claimed by Plaintiff.[1]

---

[1] Because the "issue" is central to the many similar actions involving the Receiver and members of the Group, the Court permitted the members of the Group to participate in the discovery related to the pending motions, and authorized the Group and the Defendant to file joint memoranda in connection with the motions.

Factual Background

AGME is a Maine business corporation that distributed grocery-related products to independent retailers throughout New England. In accordance with its Bylaws, AGME would enter into Membership Agreements with various retailers. Upon execution of the Membership Agreement, a retailer would become a customer and shareholder of AGME. After becoming a member of AGME, a party could purchase product from AGME provided that the member establish a Capital Account based on a "factor" established by AGME. Typically, the capital account would be funded to the level of the "factor" through a 1% surcharge that was assessed on AGME's sales to its members.

Defendant's factor, in the amount of $50,000, was fully funded at the time the dispute that is the subject of this matter arose. In addition, consistent with the AGME Bylaws, Defendant also had a balance in the Excess Capital account of $397. According to the AGME Bylaws, the capital account and the sale of shares were "to ensure the equitable contribution of needed working capital for the corporation's business operations, and to provide security for the credit extended to stockholders in the sale of goods."

Concurrent with its execution of the Membership Agreement, Defendant purchased one share of Class A Voting Common Stock, and two shares of Preferred Class B Stock. Defendant paid for the Class A Stock upon the execution of the Membership Agreement, and paid for the Class B Stock through the surcharge assessed on Defendant's purchases. Defendant pledged its Stock and the book balance of its Capital Account to AGME to secure the credit extended to AGME.

The AGME Bylaws, which were incorporated by reference into each Member Agreement, provide that "each stockholder agrees ... that said capital deposits are subject to any existing subordination agreements the Corporation may have with lending institutions." The

2

Bylaws also state that "[w]hen any stockholder sells his/her stock or otherwise ceases to be eligible for membership in the Corporation, he/she shall be entitled to be paid the balance in his/her capital deposit account plus accumulated interest, except that any indebtedness due the Corporation from him/her shall be set off against said capital deposit account and all stock, and the balance only, if any, paid him/her."

In September 2005, AGME established a $6,500,000 line of credit with the Bank of Maine, f/k/a, Savings Bank of Maine (the Bank), and executed a promissory note in that amount. As security for payment of the note, AGME signed an agreement by which AGME granted the Bank a security interest in AGME's accounts receivable. In accordance with the parties' agreement, AGME provided the Bank with monthly reports, which included pertinent information on AGME's accounts receivable.

Pursuant to its Membership Agreement, Defendant regularly purchased product from AGME on credit. Defendant has not paid for all of the product that it purchased from AGME. As alleged and established on this record, the cost of the product for which Defendant has not paid is $58,500.08.

Discussion

*A. Issue Presented*

Defendant contends that it is entitled to a credit, in the amount of its capital account book balance, against the amount that it owes for unpaid product. The Receiver maintains that Defendant's capital deposits were in the form of equity, and not debt. The Receiver, therefore, argues that Defendant is not entitled to a set off because all creditors must be paid before equity owners, and the AGME's assets are insufficient to satisfy all creditors and equity holders. The Bank asserts that regardless of whether Defendant's capital account is debt or equity, Defendant

3

is not entitled to a set off because Defendant's claim to the balance of its capital account is subordinate to the Bank's lien on AGME's accounts receivable.

*B. Standard of Review*

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would "require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

*C. Discussion*

*i. Set-off*

4

Defendant's right to set off is largely dependent upon the nature of Defendant's capital account. If the Court determines that the contribution to the account to be an equity investment, the Court would likely conclude that Defendant is not entitled to set off. If the Court were determine that the contribution represented debt to AGME, the Court would have to determine the nature of the debt (e.g., is it secured or unsecured), and whether any other creditors of AGME, including the Bank, have priority to the accounts receivable.

The Receiver maintains that Defendant is not entitled to set off the balance of the capital accounts against their outstanding indebtedness because the capital account constitutes Defendant's investment in AGME and is not, as Defendant argues, secured debt. In support of this contention, the Receiver cites the AGME Bylaws and Maine case law. More specifically, the Receiver points to the provision of the Bylaws that states that the purpose of the purchase of the stock and the establishment of the capital accounts was "to ensure the equitable contribution of needed working capital for the corporation's business operations, and to provide security for the credit extended to stockholders in the sale of goods." The Receiver also notes that to the extent that Defendant attempts to obtain the return of their capital contribution in accordance with the Bylaws, Defendant is foreclosed from doing so because Defendant has failed to comply with the required precondition for the return of the capital ("when any stockholder sells his/her stock or otherwise ceases to be eligible for membership in the Corporation, he/she shall be entitled to be paid the balance in his/her capital deposited plus accumulated interest, except that any indebtedness due toe Corporation from him/her shall be set off against said capital deposit account and all stock, and the balance only, if any paid him/her.") Because the Receivership Order prohibits the Receiver from making any such payments to the Defendant, Defendant cannot now avail itself of this set-off claim. In short, the Receiver maintains that Defendant does not have a right of set-off under the Bylaws or established Maine law.

5

Defendant contends that because AGME required that members establish a capital account as security for the members' payment of product, AGME formed a security agreement, within the scope of 11 M.R.S. § 9-1101 et seq. According to Defendant, because AGME had possession of the collateral (i.e., the proceeds/credit) pledged as security, 11 M.R.S. § 9-1207 applies. Pursuant to § 9-1207, "a secured party having possession of collateral or control of collateral ... (a) shall apply money or funds received from the collateral to reduce the secured obligation, unless remitted to the debtor." Defendant thus argues that before any funds in a member's capital account is paid to AGME, the funds must first be used to reduce the amount of the member's account receivable.

Here, the terms of the Bylaws might suggest that the capital account represents an equity investment in AGME, the record before the Court is not limited to the Bylaws. The record also includes evidence of the history of AGME's management of the capital accounts, including the evidence upon which Defendant relies to support its contention that the accounts in fact represent debt that AGME owes to Defendant. For instance, Defendant notes that AGME routinely applied capital deposits as a set off against the members' accounts receivable. In addition, Defendant has provided record evidence of communications between AGME and members, which communications suggest that AGME, without condition, would credit a member's account receivable with the balance of the member's capital account. While the Court has not discussed with specificity the evidence that each party has cited, the Court is convinced that factual issues, such as those identified herein, must be resolved in order to determine the nature of the capital accounts and the relationship between the capital accounts and the accounts receivable.

### ii. Recoupment

The Receiver also argues that Defendant does not have a right to recoupment. The defense of "recoupment is a reduction of part of the plaintiff's damages because of a right in the

6

defendant arising out of the same transaction." *Cheung v. Wu*, 2008 ME 131, ¶ 3, 955 A.2d 746 (quoting *Mundaca Inv. Corp. v. Emery*, 674 A.2d 923, 925 n.4 (Me. 1996)). According to the Receiver, Defendant's indebtedness arises out of the AGME's sale products, and there is no other activity as part of that transaction. Thus, the Receiver contends, Defendant is not entitled to recoupment.

Defendant argues that it can effectively set off the balance in its capital account against the accounts receivable based on the theory of recoupment. Simply stated, the Court disagrees. The sale of product for which the Receiver seeks to recover was not part of the same transaction by which Defendant agreed to make contributions to its capital account. Defendant made the contributions to its capital account pursuant to its membership agreement, which was executed in a transaction separate from the delivery of the product that is the subject of the Receiver's action to collect for unpaid product. Defendant, therefore, is not entitled to the defense or recoupment.

### iii. Bank Priority

The Bank argues that regardless of the characterization of the capital accounts (i.e., debt or equity), summary judgment on the issue is appropriate because the Bank had priority to the funds in the capital account. The record establishes that in September 2005, AGME executed a promissory note in favor of the Bank in the principal amount of $6,500,000. As part of the same transaction, AGME signed a security agreement by which AGME granted the Bank security interests in AGME's accounts receivable. In accordance with the agreement between AGME and the Bank, the Bank then opened a line of credit for AGME. Thereafter, in the periodic reports that AGME was required to provide the Bank, AGME did not indicate that the accounts receivable were in any way subject to a set off claim. The Bank contends, therefore, that it has first priority over the accounts regardless of whether Defendant's capital account is debt or equity.

7

In further support of its contention, the Bank also cites (1) the Member Agreement which provides that the AGME members understood "that said capital deposits are subject to any subordination agreements A.G. may have with lending institutions," and (2) the Bylaws which state, "each stockholder agrees ... that said capital deposits are subject to any ... subordination agreements the Corporation may have with lending institutions." The Bank and the Receiver maintain that two credit letters from the Bank to AGME, the first of which letters was issued in December 2010,[2] constitute subordination agreements as contemplated by the Bylaws.

Because the Court has determined that a disputed factual issue precludes the entry of summary judgment on the debt/equity issue, whether the letters constitute valid, enforceable subordination agreements potentially is a controlling issue. Furthermore, if the Court concludes that the letters are valid subordination agreements, the Court must then assess whether the subordination agreements are enforceable by the Bank against the Defendant (and other similarly situation AGME members). The issue is thus whether summary judgment is appropriate based on the Bank's priority claim regardless of whether the members' capital accounts are considered secured debt as Defendant contends.

As mentioned above, Defendant argues that because the capital accounts are secured debt, Article 9 of Maine's Uniform Commercial Code (11 M.R.S. § 9-1101 et seq.) governs the relationship between AGME and its members. Pursuant to 11 M.R.S. § 9-1404(1), AGME's accounts receivable are subject to Defendant's claim to set off unless Defendant has agreed not to assert its claim or defense. For the agreement to be enforceable by the Bank, the Bank must demonstrate that AGME's grant to the Bank of a security interest in AGME's accounts receivable was "(a) for value, (b) in good faith, (c) without notice of a claim of property or

_____

[2] The December 28, 2010, letter from the Bank to AGME, as a condition to the extension of additional credit, stated, "Capital Member Deposits shall at all times be subordinate to the payment of the Revolving Credit Facility."

8

possessory rights by others in the accounts receivable; and (d) without notice of any defenses available to a holder in due course...." 11 M.R.S. § 9-1403(2).

Upon review of the record evidence, the Court is unconvinced that summary judgment is appropriate. By way of example, in response to the Receiver's motion, Defendant has submitted evidence that disputes whether the Bank was aware of the existence of the members' interest in the accounts and whether AGME had informed the members that the members' interest, and not the interest of the Bank, was the priority interest. Given the existence of disputed factual issues, the Court cannot grant summary judgment even assuming that the capital account is a secured debt and not an equity contribution.

Conclusion

Based on the foregoing analysis,

1.  The Court determines that Defendant is not entitled to assert the defense of recoupment. The Court, therefore, enters summary judgment in favor of the Receiver and against Defendant on Defendant's defense of recoupment.

2.  The Court otherwise denies the Receiver's motion for summary judgment.

3.  The Court denies Defendant's cross-motion for summary judgment.

Pursuant to M.R. Civ. P. 79(a), the clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 2/15/13

Justice, Maine Business & Consumer Court

Entered on the Docket 2·15·13
Copies sent via Mail ___ Electronically ✓

9

BCD-CV-11-35 James C. Ebbert v. P & L Country Market et al

BCD-CV-12-28 James C. Ebbert v. Joseph Sleeper & Sons et al

Counsel for Plaintiff James C. Ebbert:
Fred W. Bopp, III, Esq.
Perkins Thompson, PA
One Canal Plaza, Suite 900
P.O. Box 426
Portland, ME 04112

Counsel for Defendant P & L Country Market et al:
Joseph Goodman, Esq.
The Goodman Law Firm, PA
537 Congress Street
P.O. Box 7523
Portland, ME 04112

Counsel for Defendant Joseph Sleeper & Sons et al:
George J. Marcus, Esq.
Marcus Clegg & Mistretta, PA
One Canal Plaza, Suite 600
Portland, ME 04101